**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Roy David SUMMERS,**
**Defendant–Appellee.**

**No. 89–5116.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1989.

Decided Jan. 2, 1990.

William Graham Otis, Senior Litigation Counsel (Henry E. Hudson, U.S. Atty., on brief) for plaintiff-appellant.

James Clyde Clark (Land, Clark, Carroll & Mendelson, on brief) for defendant-appellee.

Before WINTER, HALL and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

The United States appeals the sentence imposed on Roy David Summers, contending that the district court erred in granting a downward departure from the appropriate sentencing guidelines range. We vacate the sentence imposed and remand with instructions to impose a sentence consistent with this opinion.

I.

On September 27, 1988, an arrest warrant was served on Roy David Summers after he entered a vehicle parked outside an apartment complex in Fairfax, Virginia. A search of the vehicle resulted in the seizure of three kilograms of cocaine base (crack) and one-half kilogram of cocaine.

A search of the apartment from which Summers exited revealed three mixing bowls containing cocaine residue. A search of Summers' residence in Forrestville, Maryland led to the seizure of $62,686 in cash found under and in a mattress and the seizure of approximately seven kilograms of cocaine from a vehicle parked on his premises. Also recovered from the vehicle were a loaded semi-automatic .45 caliber pistol and 46 rounds of ammunition.[1]

A few months prior to his arrest Summers had purchased three handguns utilizing a Maryland driver's license bearing the name of "Richard Roy Ray." To accomplish the purchase Summers signed the name "Richard Ray" to the required form and falsely stated that he had not been convicted of a crime punishable by imprisonment for more than one year. In fact, Summers had a substantial criminal record including violations of law carrying a maximum punishment of more than one year in prison.[2] In addition to several arrests as a juvenile, Summers' adult criminal record for which there are dispositions included convictions for grand larcenies, possession of narcotics, a weapons violation, driving with a suspended license violations, and probation revocation.

Summers was indicted in federal court in Virginia and Maryland on various drug charges and in federal court in Maryland for the use of a firearm during a drug trafficking crime, for furnishing false identification in acquiring a firearm, and for possession of a firearm by a convicted felon. 18 U.S.C.A. § 924(c)(1) (West Supp. 1989); 18 U.S.C.A. § 922(a)(6) (West Supp. 1989); 18 U.S.C.A. § 922(g)(1) (West Supp. 1989). Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, Summers pled guilty in the Eastern District of Virginia to these various offenses.

Since the offenses were committed after November 1, 1987, Summers' sentence was governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551 *et seq.* (West 1985 & Supp.1989), and the sentencing guidelines promulgated by the United States Sentencing Commission. The probation officer preparing the presentence report correctly calculated the guidelines offense level for the narcotics violations to be level 36. She recommended that this be increased by two levels to reflect Summers' role in the offense, U.S.S.G. § 3B1.1(a), and decreased by two levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a net total of offense level 36. Subsequently, the court and the parties agreed that the correct guidelines offense level was 36 and the criminal history category was V, producing a sentencing guidelines range of 292 to 365 months. In addition, because Summers was convicted of use of a firearm during a drug trafficking crime, 18 U.S. C.A. § 924(c)(1) mandated the imposition of a 60–month sentence to be served consecutively to the sentence for the narcotics violation.

The probation officer also correctly calculated Summers' criminal history category to be V.[3] While Summers did not contest the accuracy of this determination, he urged the district court to depart below the appropriate sentencing guidelines range based on what he styled an "exaggeration" of his criminal history category. At the sentencing hearing, the district court stated that "because of [Summers'] age and because of some of the aggravation, or the increase that has been caused by these driving without a license charges as they relate to [the defendant's] criminal history" a sentence below the appropriate sentencing guidelines range would be imposed. The court then departed and imposed a sentence of 180 months for the narcotics violations and a consecutive 60–month sentence for the section 924(c)(1) weapons violation.

## II.

18 U.S.C.A. § 3553(b) (West Supp.1989) requires a court to impose a sentence with-

---

1. Summers did not contest the legality of these searches and seizures.

2. In addition, according to an uncontested statement in the presentence report, Summers is a well-known member of the "Crips," a notorious Los Angeles street gang which engages in extensive criminal activity, including drug and firearm trafficking and murder.

3. Summers' criminal record produced a total of 10 points. *See* U.S.S.G. § 4A1.1.

in the guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."[4] Whether a sentence should be based on a departure envisions a two-prong test. *See* Wilkins, *Sentencing Reform and Appellate Review*, 46 Wash. & Lee L.Rev. 429, 438 (1989). The first prong of the test initially requires a determination that a particular aggravating or mitigating circumstance was "not adequately taken into consideration by the Sentencing Commission." If the court determines that a circumstance was "not adequately taken into consideration," it must next engage in a fact-finding mission to determine if the circumstance is supported by facts in the particular case under consideration. Then, if the district court identifies one or more aggravating or mitigating circumstances "not adequately taken into consideration," it may depart from the sentencing guidelines range only if it further determines that because of the circumstance a sentence different from the guidelines sentence "should result." This second prong of the departure test requires the district court to determine whether the circumstance now identified and found to exist in the particular case is of sufficient importance and magnitude to justify a departure. In many cases a departure will not be warranted even though a circumstance was not "adequately taken into consideration." This is because a circumstance may be irrelevant for sentencing purposes or, while it may be of sufficient significance for some consideration, it may warrant consideration only when determining the point within the guidelines range where the ulti-

mate sentence is to be fixed. And, in some cases, a circumstance may be determined to exist which standing alone would provide a justifiable basis for departure but may be offset by a competing circumstance so that when considered within the context of a particular case, a departure would not be warranted.

### III.

■ 18 U.S.C.A. § 3742(f)(2) (West Supp. 1989)[5] states in pertinent part that "[i]f the court of appeals determines that the sentence ... is outside the applicable guideline range and is unreasonable ... [the court shall] remand the case for further sentencing proceedings with such instructions as the court considers appropriate...." Appellate review of the "reasonableness" of the decision to depart[6] encompasses both the reasonableness of whether a departure is warranted, as well as the reasonableness of the amount or extent of departure. Because the statutory standard of "unreasonableness," standing alone, gives insufficient guidance to promote consistency of appellate decisions, appellate courts must give it a more specific and workable meaning by analogizing it with standards of review traditionally applied.

■ A standard akin to that used in addressing questions of law should be used when reviewing the initial determination that a mitigating or aggravating circumstance was not "adequately taken into consideration." *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.1989). This is because 18 U.S.C.A. § 3553(b) specifically confines the district court examination of this issue to the guidelines, policy statements, and official commentary of the Commission.[7] Thus, the district court may not concern itself with background doc-

---

**4.** *See also* U.S.S.G. Ch. 1, Pt. A, 4(b) (policy statement on departures).

**5.** Similar language is also found in subsection (e)(3).

**6.** Not before us and consequently not addressed is the issue of whether a party may appeal the refusal of a district court to depart. *See United States v. Colon,* 884 F.2d 1550 (2d Cir.1989);

*United States v. Franz,* 886 F.2d 973 (7th Cir. 1989).

**7.** This provision was added to the Sentencing Reform Act by section 3 of the Sentencing Act of 1987, Pub.L. No. 100–182, § 3, 101 Stat. 1266. The legislative intent is succinctly expressed at 133 Cong.Rec. S16,647–48 (daily ed. Nov. 20, 1987) (statements of Senators Thurmond and Kennedy).

uments considered by the Commission, the extent or adequacy of Commission debate about a particular circumstance, or subjective Commission intent regarding a circumstance. Rather, the district court must limit its examination solely to the language of the Guidelines Manual and the reasonable inferences which may be drawn from it. To assist in this determination, guidance may be found in the language of particular guidelines and accompanying commentary, the general description of the Commission's approach to the scope of guidelines and departures, and Commission pronouncements on departures interspersed throughout the Guidelines Manual. In commentary accompanying specific guidelines and in policy statements, the Commission has expressly identified circumstances that may warrant a departure,[8] commonly known as "Commission-identified" departures. A second type of departure involves aggravating and mitigating circumstances not specifically identified by the Commission as a potential basis for departure but which the sentencing court has identified as providing a justifiable basis. These may properly be labeled "judicially-created" departures.

The standard of reasonableness on appeal is also applied when reviewing the issue of whether there is sufficient evidence to support a finding that a circumstance on which a departure is based actually exists in the particular case. Here, since the district court is engaged in fact-finding, the appellate court should be more deferential, using a standard of review approximating the clearly erroneous one.

The final issues the appellate court must review under the reasonableness standard are whether the identified departure circumstance "should result" in a sentence above or below the appropriate sentencing guidelines range and the degree or extent of the departure. Once the first prong of the departure test has survived appellate scrutiny, how much leeway should the district court be given when evaluating the significance of a particular circumstance, balancing competing interests and making

the judgment call of fixing the actual sentence above or below the appropriate sentencing guidelines range? While the almost unlimited discretion in sentencing possessed by district courts prior to the implementation of the Sentencing Reform Act no longer exists, this decision should not be reversed unless an abuse of discretion occurs.

## IV.

■ Applying this approach we hold that the district court correctly determined that an overstatement of the seriousness of a defendant's criminal history may be a circumstance "not adequately taken into consideration."

Our analysis is simplified since the Sentencing Commission has expressly identified overstatement of a defendant's criminal history category as a circumstance that may warrant a departure. U.S.S.G. § 4A1.3, p.s., states that "[t]here may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history.... The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ..., and therefore consider a downward departure from the guidelines." The existence of this "Commission-identified" departure establishes per se that this circumstance may exist.

Even with a "Commission-identified" departure circumstance, the district court must still determine factually whether such a circumstance actually exists in the case under consideration. Applying the clearly erroneous standard, we cannot say that error was committed by the district court in making this finding.

■ Although the determination of the district court that some departure "should result" was not an abuse of its discretion and thus was not unreasonable, the extent

---

8. *See also* Chapter 5, Part K, of the Sentencing Guidelines.

of the downward departure was.[9] While a review of the "reasonableness" of the degree or extent of a departure under an abuse of discretion standard may often be difficult, our task here is simplified. In its policy statement on Adequacy of Criminal History Category, the Commission stated, "[i]n considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." U.S.S.G. § 4A1.3, p.s. Thus, while we cannot say the district court acted unreasonably in essentially excluding the driving offenses from the determination of Summers' criminal history category, the extent of the downward departure should not then fall below the sentencing guidelines range produced by offense level 36 and criminal history category IV, the correct category absent consideration of the driving offenses. *See United States v. Jackson*, 883 F.2d 1007 (11th Cir.1989); *United States v. Lopez*, 871 F.2d 513 (5th Cir. 1989). This would have produced a sentencing guidelines range of 262 to 327 months, within which the specific sentence should have been selected, plus 60 months to be served consecutively for the section 924(c)(1) weapons violation.

Therefore, we hold that the departure decision was unreasonable to the extent the sentence was below that which would have resulted had the driving offenses not been included in the criminal history category determination.

V.

▪ Summers also ingeniously argued to the district court and to us that the seriousness of his criminal history was overstated for other reasons. He reasoned that had he not been convicted of the driving offenses, the probationary sentence he was serving for grand larceny would not have been revoked; if it had not been revoked he

would not have been incarcerated; if he had not been incarcerated he would not have been paroled; *if he had not been paroled he would not have been a parolee when he committed the instant drug and weapons offenses;* and if he had not been incarcerated the instant offenses would not have been committed within two years of his being released from custody, all of which contributed another three points to his criminal history score.

We specifically reject this flawed argument which has as its objective the total disregard of U.S.S.G. §§ 4A1.1(d) and (e).[10] The former subsection adds points for a defendant's commission of an offense while under some form of criminal justice control for a prior offense, while the latter enhances the criminal history score because of the recency of a prior period of incarceration before commission of the instant offense. It is apparent from the language of U.S.S.G. § 4A1.1, as well as from the commentary, that the Commission recognized the likelihood that a defendant would incur criminal history points under both subsections, as well as under one or more of subsections (a)–(c). The fact that this occurs does not mean that the defendant's criminal history has been overstated. Importantly, points are properly assessed under subsections (d) and (e) regardless of whether the triggering criminal activity was a driving conviction, a more serious offense, or a non-criminal probation violation. The fact remains that Summers committed the instant offenses while on parole and within two years of his release from incarceration, both of which are properly a basis for enhancing his punishment under U.S.S.G. §§ 4A1.1(d) and (e).

VI.

▪ *The district court apparently partially based its decision to sentence below the appropriate guidelines range "because of*

---

9. The sentence of 180 months was 82 months below the bottom of the appropriate sentencing guidelines range resulting after excluding the three driving with a suspended license convictions from the calculation of Summers' criminal history category.

10. Even if we were to accept this reasoning as valid, Summers' resulting sentencing guidelines range would have been 210 to 262 months (offense level 36, criminal history category II), plus 60 months for the section 924(c) violation.

[Summers'] age." It did not elaborate on the extent it was departing on the basis of age and we need not attempt to speculate, for regardless of the extent of the departure on the basis of age, it was unreasonable.

The Sentencing Commission expressly addressed the relevance of age as a specific offender characteristic in U.S.S.G. § 5H1.1, p.s. This section reads in part:

> Age is not ordinarily relevant in determining whether a sentence should be outside the guidelines.... Age may be a reason to go below the guidelines when the offender is elderly *and* infirm and where a form of punishment (*e.g.*, home confinement) might be equally efficient as and less costly than incarceration.

(Emphasis in original.) Summers is a 23-year-old adult. There is nothing extraordinary about his age and the district court clearly erred in basing a departure on this factor.

### VII.

In conclusion, we hold that while some departure based on a determination that inclusion of the driving offenses resulted in an overstatement of the seriousness of Summers' criminal history did not constitute reversible error, the extent of the departure was unreasonable. We also hold that the district court clearly erred in partially basing a departure on Summers' age. Consequently, we vacate the sentence imposed and remand for sentencing within the sentencing guidelines range corresponding to offense level 36, criminal history category IV, in addition to the imposition of the 60-month mandatory sentence for the section 924(c)(1) violation.

VACATED AND REMANDED WITH INSTRUCTIONS.