924 F.2d 1053
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Harold HARVEY, Sr., Defendant-Appellant.
 No. 90-5601.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1990.
Decided Jan. 30, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CR-89-136)
 Lee Howard Adler, Beckley, W. Va., argued, for appellant.
 John Patrick Rowley, III, Assistant United States Attorney, Charleston, W. Va., argued for appellee; Michael W. Carey, United States Attorney, Charleston, W. Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This is an appeal of the district court's sentencing of defendant Jerry Harold Harvey, Sr. Harvey contends that the trial court erroneously relied on evidence at sentencing that lacked sufficient indicia of reliability to overcome the demands of due process and the federal Sentencing Guidelines. Harvey also asserts that the trial court incorrectly departed upward from the Guidelines range appropriate to his conviction. We affirm.
 
 BACKGROUND
 
 2
 On July 7, 1989, the Federal Bureau of Investigation ("FBI") and the West Virginia State Police arrested Harvey, charging him with eight counts of distribution of Tylox and other Schedule II controlled substances in violation of 21 U.S.C. Sec. 841(a)(1) and with one count of conspiracy in violation of 21 U.S.C. Sec. 846. On October 17, 1989, Harvey entered into a written plea agreement, in which he agreed to plead guilty to distribution of Tylox. On the same day, the court provisionally accepted his plea. The Probation Office investigated Harvey's conduct and background to prepare a presentence report ("PSI"), which it submitted to the court.
 
 
 3
 On December 12, 1989, the day before his scheduled sentencing, Harvey objected to certain findings in the PSI. Most notably, Harvey objected to the finding that his "relevant conduct" included the sale of more than 20,000 Tylox. The following day, the court held an evidentiary hearing at which time Harvey testified that he sold no more than 2,300 Tylox. Several witnesses testified against Harvey, stating that for five years prior to these proceedings, Harvey distributed Tylox and other controlled substances.
 
 
 4
 Officer Jerry O. Cole, a state police officer assigned to the federal government's Drug Task Force, testified that he had investigated Harvey for two years, that Harvey dealt in Tylox, Dilaudid, and Xanax, and that Harvey bought prescriptions and received drugs from certain individuals. Cole stated that his investigation revealed that Harvey had sold approximately 23,000 Tylox capsules to nine primary purchasers for cash and for stolen property. Cole listed the nine persons who purportedly had purchased Tylox from Harvey, including Phillip Stafford (5,000 pills)[1] and Rex Hatfield (10,000 pills).[2]
 
 
 5
 Testimony also was adduced that Harvey used certain individuals to aid him in his drug sales. Millie Toler Davis testified that she aided Harvey in the sale of drugs during the course of their eight-year relationship, which ended in 1988. FBI Agent James Wise offered to the court statements that Maggie Wimmer, as well as her 17-year-old brother Dale, had made to the FBI.[3] According to Ms. Wimmer's statement, Harvey started "dating" her in the summer of 1989 when she was 14 years old. Harvey was 50 years old at the time. Ms. Wimmer, who dated Harvey because he gave her drugs and presents, sold drugs for Harvey on more than 40 occasions. Dale Wimmer stated that Harvey induced him to sell drugs on five to ten occasions. Tammy Accord testified regarding her own involvement with Harvey. According to her testimony, in 1988 and 1989 on several occasions, Harvey also enlisted Ms. Accord--a 17-year-old with whom he also was sexually involved--to sell drugs.
 
 
 6
 The court adopted the statements of fact in the PSI, finding against Harvey on all but one of his objections.[4] The court found that, as part of a common scheme, Harvey had sold approximately 20,000 Tylox and calculated Harvey's Guidelines Base Offense Level at 20. Taking specific offense characteristics into account, the court adjusted the base level to 26 and placed Harvey in Criminal History Category I. The court determined the Guidelines range to be 63 to 78 months, with a fine range of $12,500 to $1,000,000. The court, however, departed upward from the Guidelines range. The trial judge reasoned that the Guidelines failed to consider Harvey's use of juveniles to sell drugs. The court ordered Harvey to serve 120 months imprisonment and to pay a $20,000 fine. Harvey appeals the sentence.
 
 DISCUSSION
 I. Calculation of the Base Offense Level
 
 7
 Harvey asserts that, in two manners, the trial court erred in calculating the base offense. First, Harvey argues that the trial court erroneously included in its calculations drug quantities for sales that occurred prior to the date of the conspiracy charged in the indictment, which began in August 1987. Second, Harvey contends that the trial court erred in finding that the sale of 20,000 Tylox constituted the relevant conduct.
 
 
 8
 As Harvey readily acknowledges, the Guidelines instruct the sentencing court to include in its calculations the total amount of drugs distributed in "the same course of conduct or common scheme or plan as the count of conviction." Federal Sentencing Guidelines Sec. 1B1.3(a). The issue thus is whether the court erred by including, as relevant conduct, conduct prior to inception of the conspiracy charged.
 
 
 9
 Under the Guidelines, charged conduct is not necessarily co-extensive with relevant conduct for sentencing. See, e.g., United States v. Mann, 877 F.2d 688, 690 (8th Cir.1989) (defendant guilty of aiding and abetting cocaine sale accountable as well for earlier offense). Rather, the Guidelines focus on the individual's conduct and knowledge, and the charged conduct may represent but a portion of the defendant's conduct relevant for sentencing. In other words, the "course of conduct" may reach beyond the parameters of the offense charged. For example, a defendant may commence a particular course of unlawful conduct on his own and only later enlist confederates to aid in the crime. At this latter moment the conduct may mature into a conspiracy. If the defendant is charged with and convicted of conspiring to commit the crime, the Guidelines contemplate consideration of the entire course of conduct at sentencing, not only the conduct that occurred after the conspiracy was formed. See Federal Sentencing Guidelines Sec. 1B1.3 and Application Note 2. In this manner the Guidelines strive to individualize sentencing in light of the actual knowledge and actions of each convicted defendant. To omit consideration of actions prior to the inception of a charged conspiracy would undermine the effort of the Guidelines to individually sentence convicted defendants. Such a result is neither rational nor required under the Guidelines.
 
 
 10
 In the case at issue, the district court found that the conspiracy charged was not co-extensive with Harvey's relevant course of conduct selling Tylox. The court below found that Harvey sold Tylox to nine primary customers, who--in some cases--had purchased Tylox from him as much as five years prior to the indictment. Finally, the district court found that these sales, no less than later sales that occurred during the duration of the conspiracy, were a part of the course of conduct that included the offense to which Harvey pled guilty. As much as Harvey's sales efforts during the conspiracy were a part of a common scheme, his efforts pre-dating the inception of the conspiracy too may have been a part of that common scheme to sell Tylox. As discussed above, the district court did not err simply because it concluded that actions beyond the time frame of the conspiracy charged were part of Harvey's common scheme and thus were relevant conduct for sentencing.
 
 
 11
 Second, Harvey argues that even if the district court properly looked beyond the duration of the conspiracy to calculate his relevant conduct, the court erred in finding that he had sold 20,000 Tylox. The district court found by a preponderance of the evidence that Harvey sold more than 20,000 Tylox. Because the quantity of drugs went to the question of Harvey's sentence, rather than to his guilt, the preponderance standard was appropriate. See United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989), cert. denied, 110 S.Ct.1144 (1990). This Court will not disturb the district court's factual findings unless clearly erroneous. See United States v. Williams, 880 F.2d 804, 806 (4th Cir.1989).
 
 
 12
 At the sentencing hearing, Officer Cole summarized the basis for his conclusion that Harvey sold at least 23,000 Tylox. He identified nine individuals who collectively purchased this amount of Tylox. He also stated that numerous witnesses, whom he viewed as reliable, had corroborated the fact that these sales had occurred. The district court found that Cole's testimony was reliable and supported the conclusion that Harvey had sold 23,000 Tylox.
 
 
 13
 Harvey contends that this information was not reliable because the government failed to call as witnesses the primary purchasers. This Court, however, has made clear that the government may offer "summary" testimony as long as the testimony is reliable and the defendant has an opportunity to rebut any contested hearsay. See United States v. Roberts, 881 F.2d 95, 106 (4th Cir.1989). Harvey had ample opportunity to cross-examine Cole regarding his testimony, and, had Harvey so desired, Harvey could have subpoenaed to testify directly those individuals who, according to Cole, had purchased Tylox from Harvey. In particular, Harvey could have subpoenaed Hatfield and Stafford who collectively purchased more than 15,000 Tylox. Harvey did not and the district court concluded that Cole's testimony was reliable. Harvey has done little to cast doubt on that finding and certainly has failed to show that it was clearly erroneous. See United States v. Byrd, 898 F.2d 450, 453 (5th Cir.1990) (upholding sentencing based on summary testimony and findings of probation officer); United States v. Agyemang, 876 F.2d 1264, 1271-72 (7th Cir.1989) (upholding sentencing where "most significant evidence" was summary testimony of FBI agent).
 
 II. Upward Departure
 
 14
 Harvey argues that the district court also erred by departing upward from the sentencing range recommended pursuant to the Guidelines. Based on its finding that Harvey had induced juveniles both to take and to sell drugs, the district court departed upward from the Guidelines. The district court reasoned that the Sentencing Commission failed to adequately consider this conduct in formulating the Guidelines ranges.
 
 
 15
 A sentencing court generally must sentence a convicted defendant within the Guidelines range. The court, however, may depart from the Guidelines range where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. Sec. 3553(b). To depart upward from the Guidelines range, a trial judge must engage in a two-part analysis. See United States v. Summers, 893 F.2d 63, 66 (4th Cir.1990). First, the judge must decide whether the Sentencing Commission adequately considered the particular aggravating circumstance at issue and whether the evidence supports a finding of that circumstance. Second, the district court must determine whether the circumstance "should result" in a sentence above the Guidelines range, and, if so, to what extent. Id.
 
 
 16
 The district court first determined that Guidelines Sec. 2D1.1, which is applicable to violations of 21 U.S.C. Sec. 841(a)(1), failed to consider "the fact that ... juveniles ... were induced into selling controlled substances for the defendant." This determination, which this Court reviews de novo for legal error, see id., was not incorrect because section 2D1.1 simply does not address the involvement of underage persons. The district court also found that Harvey's drug sales involved minors. The district court reached this conclusion only after reviewing substantial evidence, including testimony by Tammy Accord and the statements of the Wimmer children, to the effect that Harvey encouraged children to aid him in his sales. This finding, which this Court reviews for clear error, see id. at 67, was not clearly erroneous. The district court thus did not err in its application of the first prong of the Summers test for upward departure.
 
 
 17
 The district court properly, though implicitly, applied the second prong of the Summers test. Application of this prong, which instructs sentencing courts to decide whether the circumstance not contemplated by the Guidelines "should result" in an enhanced sentence, is reviewed for an abuse of discretion. See id. The district court analogized the circumstances to those covered by Guidelines Sec. 2D1.2, which establishes the penalties for offenses involving protected areas and underage children. Although the court recognized that section 2D1.2 was inapplicable to this case because Harvey had not been charged with using juveniles to distribute drugs, the court concluded that Harvey's actual use of minors "should result" in a sentence comparable to those under section 2D1.2.
 
 
 18
 In Summers, this Court explained that where a district court appropriately departs from the Guidelines, this Court will review the actual sentence imposed for reasonableness and will affirm the sentence absent "an abuse of discretion." Id. The district court here did not abuse its discretion in loosely following the dictate of section 2D1.2. The district court departed upward by the equivalent of four levels, imposing a sentence that fairly corresponds with the aggravated nature of Harvey's unlawful conduct. This upward departure, well explained and well reasoned by the district court, did not amount to an abuse of discretion. See United States v. Diaz-Villafane, 874 F.2d 43, 49-50 (1st Cir.) ("[A]ppellate review must occur with full awareness of, and respect for, the trier's superior 'feel' for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure."), cert. denied, 110 S.Ct.177 (1989).
 
 
 19
 III. Whether Harvey was an Organizer of Criminal Activity
 
 
 20
 Harvey contends that the district court erred by increasing his offense level by four levels pursuant to Guidelines Sec. 3B1.1. That section instructs the district court to increase the offense level by four "if the defendant was an organizer or a leader of a criminal activity that involved five or more participants or was otherwise extensive." The district court's conclusion that Harvey played such an aggravating role in the offense is a factual determination that this Court will and must affirm unless it is clearly erroneous. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.), cert. denied, 111 S.Ct.432 (1990).
 
 
 21
 The district court found that Harvey distributed 20,000 Tylox, set the price for the drugs, and sold the drugs to numerous individuals. In addition, the court found that Harvey used his co-defendant, Millie Davis, and three juveniles to aid him in his dealings. Together, this evidence sufficiently establishes that Harvey played an "aggravating role" in a scheme to sell drugs and that the district court's finding to this effect was not clearly erroneous.
 
 IV. Obstruction of Justice
 
 22
 Harvey argues that the district court erred by increasing Harvey's offense level by two levels under Guidelines Sec. 3C1.1. That section instructs the district court to increase the offense level by two points "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." The district court found that in several ways Harvey attempted to obstruct justice. Specifically, the district court found that Harvey contacted Maggie Wimmer's mother by telephone after he was arrested and advised the Wimmers to not cooperate with federal authorities. The district court also found that Harvey stated that he would kill anyone who "set him up." This evidence supports the district court conclusion that Harvey attempted to obstruct justice, a conclusion that was not clearly erroneous.
 
 V. Acceptance of Responsibility
 
 23
 Harvey argues that the district court erred by failing to decrease Harvey's offense level by two levels under Guidelines Sec. 3E1.1. That section instructs the district court to decrease the offense level by two points "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The section also states that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." This Court reviews the district court's decision whether to grant a two-point reduction to determine whether it is clearly erroneous. United States v. White, 875 F.2d 427, 431 (4th Cir.1989).
 
 
 24
 Although Harvey agreed to plead guilty the district court had significant and substantial reasons to refuse Harvey the two-point reduction. The court found that following the plea agreement, Harvey was untruthful with both the probation office and the investigating officers. Furthermore, as discussed above, the court found that Harvey had attempted to obstruct justice. The trial court was in a unique position to assess Harvey's acceptance of responsibility for his actions and the district court's assessment in this situation was not clearly erroneous.
 
 VI. Imposition of the $20,000 Fine
 
 25
 Finally, Harvey objects to the district court's imposition of a $20,000 fine. The Guideline fine range for Harvey's offense spans $12,500 to $1,000,000. The fine imposed reflected the seriousness of the offense and the other considerations set forth in section 5E1.2, including the trial court's assessment of Harvey's ability to pay the fine. The trial court adopted the PSI's finding that Harvey had approximately $200,000 in assets and approximately $178,000 in outstanding debts. In light of his financial situation, the fine imposed was not unreasonable. Because the record supports the district court's decision, which is not clearly erroneous, this Court will not disturb it. Cf. United States v. Roberts, 881 F.2d 95, 102-03 (4th Cir.1989).
 
 AFFIRMED
 
 
 [1]
 In July 1989, Stafford admitted that for three or four years he had been buying Tylox from Harvey
 
 
 [2]
 Hatfield also admitted to the Grand Jury that he had purchased Tylox from Harvey from 1982 until 1983, and from 1985 until 1988
 
 
 [3]
 Neither Ms. Wimmer nor her brother testified at the sentencing hearing. Both Maggie and Dale Wimmer were available as witnesses at the sentencing hearing, but the parties chose not to call either to testify
 
 
 [4]
 The court sustained Harvey's objection to an assertion that he had made films of juveniles engaged in sexual acts with him, finding that the evidence did not substantiate the finding