945 F.2d 398
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
Wade D. BRADY, Defendant-Appellant.
 No. 90-5472.
United States Court of Appeals, Fourth Circuit.
 Submitted March 26, 1991.
Decided Oct. 1, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Hiram H. Ward, Senior District Judge. (CR-89-222-WS)
 Daniel S. Johnson, Wilson, Degraw, Johnson & Rutledge, David F. Tamer, Winston-Salem, N.C., for appellant.
 Robert H. Edmunds, Jr., United States Attorney, Richard S. Glaser, Jr., Assistant United States Attorney, Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before K.K. HALL, SPROUSE and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Wade D. Brady appeals his conviction for bank larceny (18 U.S.C. § 2113(b)) and the sentence he received, contending that the district court erred in denying his motion for acquittal at the end of the government's evidence and in departing upward from the sentencing guideline range. We affirm.
 
 
 2
 In June 1989, Brady's bank mistakenly deposited $63,779.30 into his savings account, which had a zero balance before the deposit. On June 29, 1989, Brady went to the bank to withdraw $30,000 in cash but, on the advice of a bank representative, accepted an "official check" for that amount from the bank instead. He then opened a checking account with $5,000 from the savings account and purchased a 7-day certificate of deposit for $25,000. On the same day, he took the $30,000 "official check" to another branch of the bank and cashed it. On July 5, Brady withdrew $3,000 from the savings account, and on July 6, he cashed the certificate of deposit at a third branch office, receiving $9,000 cash and another "official check" for $16,038.23.
 
 
 3
 When bank employees discovered the error, they contacted Brady who told them, at different times, that he thought a relative had deposited the money in his account and that he thought he had inherited it from his father. He returned the $16,038.23 check, but said he had no more than that left. He said he had spent some of the money for rock cocaine and had given some to another person to hold for him. He later told an FBI agent that he neither knew nor cared how the money got into his account and that he had spent all the unreturned money-$42,593.61--on drugs.
 
 
 4
 At the close of the government's evidence, Brady moved for a judgment of acquittal, arguing that the government had not proved intent to steal. The motion was denied and Brady was convicted. Brady renews his argument on appeal; however, we find no merit in it. Considering circumstantial as well as direct evidence and allowing the government the benefit of all reasonable inferences, United States v. Tresvant, 677 F.2d 1018 (4th Cir.1982), there was sufficient evidence for the jury to find that Brady intended to steal money from the bank.
 
 
 5
 As calculated by the presentence report, Brady's offense level was 11 and his criminal history was VI, giving him a guideline range of 27-33 months. The government requested an upward departure to offense level 26 or 28, arguing that Brady had committed the bank larceny in order to aid and abet the distribution of $42,000 worth of drugs. The district court agreed that a departure was in order, increased the offense level to 15, which resulted in a guideline range of 41-51 months, and imposed a sentence of 48 months.
 
 
 6
 Brady argues that the departure was unauthorized because it was based on speculation, while conceding that he admitted buying drugs with the money.
 
 
 7
 Whether a departure is warranted is reviewed under the two-prong test set out in United States v. Summers, 893 F.2d 63 (4th Cir.1990):
 
 
 8
 The first prong of the test initially requires a determination that a particular aggravating or mitigating circumstance was "not adequately taken into consideration by the Sentencing Commission." If the court determines that a circumstance was "not adequately taken into consideration," it must next engage in a fact-finding mission to determine if the circumstance is supported by facts in the particular case under consideration. Then, if the district court identifies one or more aggravating or mitigating circumstances "not adequately taken into consideration," it may depart from the sentencing guidelines range only if it further determines that because of the circumstance a sentence different from the guidelines sentence "should result." This second prong of the departure test requires the district court to determine whether the circumstance now identified and found to exist in the particular case is of sufficient importance and magnitude to justify a departure.
 
 
 9
 893 F.2d at 66. The guidelines specifically authorize a departure if the defendant committed the offense in order to facilitate or conceal the commission of another offense. U.S.S.G. § 5K2.9. Here, Brady repeatedly stated that he used the money to buy drugs. Given these admissions, we cannot say that the district court abused its discretion in determining that a departure was appropriate.
 
 
 10
 Once a departure is determined to be warranted, this court must consider whether the extent of departure is reasonable. See 18 U.S.C. § 3742(f)(2) (West Supp.1990). The district court departed upward by four offense levels, from 11 to 15, which raised the maximum sentence from 33 months to 51 months. The court rejected the government's suggestion that it assume Brady spent the whole $42,000 on drugs and make a much greater upward departure--to offense level 26 or 28. An offense level of 15 corresponds to a drug offense involving between 500 milligrams and 1 gram of rock cocaine, or crack. Based on the testimony given at sentencing by DEA Agent Ingram, a gram of crack would have a total value of about $100. We find that the district court's effort to increase Brady's penalty in proportion to the seriousness of his conduct was not an abuse of discretion.
 
 
 11
 We therefore affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 12
 AFFIRMED.