985 F.2d 554
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellant,
v.
Ernesto Orlando LANZA-CHAN, Defendant-Appellee.
 No. 92-5239.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: February 3, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Terrence W. Boyle, District Judge. (CR-91-89)
 David Paul Folmar, Jr., Assistant United States Attorney, Raleigh, North Carolina, for Appellant.
 Jeffrey Lee Starkweather, Chapel Hill, North Carolina, for Appellee.
 Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellant.
 E.D.N.C.
 VACATED AND REMANDED.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 On October 22, 1991 a grand jury indicted Ernesto Orlando LanzaChan on a charge of unlawfully re-entering the United States after deportation in violation of 8 U.S.C. § 1326(b)(1). Pursuant to a plea agreement with the Government, Lanza-Chan pleaded guilty. In preparation for sentencing, the United States Probation Office completed a presentence report indicating that Lanza-Chan's criminal history category under the sentencing guidelines was VI. Lanza-Chan requested that the district court consider a downward departure from his criminal history category as permitted by U.S.S.G. § 4A1.3 because proposed category VI significantly overrepresented the seriousness of his previous crimes, most of which were petty. The district court agreed, and departed downward from category VI to category I. The Government now appeals that decision, contending that the court's five-category downward departure violated the guidelines. We vacate Lanza-Chan's sentence and remand this cause for resentencing.
 
 
 2
 * Lanza-Chan, a native of Mexico, came to the United States at age seventeen seeking work. In June 1988, while unemployed and homeless, he was arrested in San Benito, Texas for breaking into a residence and stealing certain appliances and other property. LanzaChan pleaded guilty to the offense and was deported from the United States in July 1989. By his own admission Lanza-Chan then reentered the United States without having applied for permission from the Attorney General, as required by 8 U.S.C. § 2252. After working briefly as a house painter in Texas, he moved to Jacksonville, North Carolina to work as a migrant laborer. Lanza-Chan was unemployed during much of the off-season, living in shelters or on the streets. He occasionally abused alcohol.
 
 
 3
 During a seventeen-month period from September 1989 to February 1991, Lanza-Chan was convicted of five misdemeanors and one felony in the Jacksonville area. The offenses were as follows:
 
 
 4
 1.September 9, 1989: Lanza-Chan pleaded guilty to injuring personal property and resisting arrest. According to police reports, he kicked out an automobile windshield while intoxicated.
 
 
 5
 2. October 23, 1989: Lanza-Chan pleaded guilty to first-degree trespass when he was discovered sleeping in a storage building with several other migrant laborers.
 
 
 6
 3. July 4, 1990: Lanza-Chan pleaded guilty to breaking and entering the Triangle Motor Company in Jacksonville. He was discovered sleeping in an old office trailer behind the Company's garage. By his own admission he had entered the building in the middle of the night to get out of the rain and sleep off the effects of intoxication.
 
 
 7
 4. November 1, 1990: Lanza-Chan pleaded guilty to first-degree trespass after entering an unoccupied building in Jacksonville to sleep.
 
 
 8
 5. January 6, 1991: Lanza-Chan pleaded guilty to shoplifting when he was arrested for removing four packs of cigarettes and two cans of beer from a Jacksonville grocery store.
 
 
 9
 6. February 7, 1991: Lanza-Chan pleaded guilty to a felony charge of breaking and entering an unlocked automobile and removing a vase and a picture.
 
 
 10
 These six convictions accounted for the majority of the fourteen criminal history points that determined Lanza-Chan's final criminal history score under the guidelines. While Lanza-Chan was serving his sentence for the felonious breaking and entering charge, the Immigration and Naturalization Service was informed of the conviction and determined that he was the same person who had been deported previously on July 26, 1989. Based on this evidence of re-entry, a grand jury in the Eastern District of North Carolina then returned the indictment from which this appeal stems.
 
 II
 
 11
 The Government contends that the district court erred by departing downward from Lanza-Chan's established guideline range upon a finding that his criminal history category overrepresented the seriousness of his past offenses. Because we hold that the district court failed to follow the proper procedures for a downward departure, we do not reach the gravamen of the Government's argument.
 
 
 12
 A district court may depart from the sentencing guidelines only if
 
 
 13
 the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.
 
 
 14
 18 U.S.C. § 3553(b). In reviewing downward departures, we must determine whether the sentence was imposed either in violation of law or as a result of an incorrect application of the guidelines. 18 U.S.C. § 3742(f)(1). If so, we must remand for resentencing. Williams v. United States, 112 S. Ct. 1112, 1120 (1992).
 
 
 15
 If the district court identifies one or more mitigating circumstances "not adequately taken into consideration" by the Sentencing Commission, it may depart from the established sentencing range only if it determines that a sentence different from the guidelines "should result." 18 U.S.C. § 3553(b). The court must determine whether the circumstance identified and found to exist in the particular case is of sufficient importance and magnitude to justify a departure. In making this determination, the district court is engaged in fact finding, and we review the determination for clear error. United States v. Summers, 893 F.2d 63, 67 (4th Cir. 1990). " '[Yet] our deference depends upon the district court's providing a reasoned statement of the specific reasons for its departure in language relating to the Guidelines....' " United States v. Rusher, 966 F.2d 868, 882 (4th Cir.) (quoting United States v. Kennedy, 893 F.2d 825, 827 (6th Cir. 1990)), cert. denied, 113 S. Ct. 351 (1992).
 
 
 16
 The purpose of Rusher 's "reasoned statement" requirement stems from the policy concerns that underlay the creation of the sentencing guidelines. Congress enacted the Sentencing Reform Act to remove the disparities in sentencing that characterized earlier systems, where judges had broad discretion in imposing sentences. Id. (citing Mistretta v. United States, 488 U.S. 361, 366 (1989)). In Rusher we noted that allowing a judge summarily to depart from the guidelines without explaining why would be to return to the sentencing practices rejected by Congress. Id. In the instant case, the district court offered a reason for its decision to depart downward: the court believed that the overrepresentation of Lanza-Chan's criminal history in light of his multiple but relatively petty offenses justified a departure from criminal history level VI to level I. This explanation is insufficiently detailed to survive review. Where a district court chooses to depart from the guidelines, it must provide a " 'short clear written statement or a reasoned statement from the bench' " to support the departure. Id. (quoting United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied, 492 U.S. 910 (1989)). Here the court provided no written statement, and its oral explanation did not reflect with specificity the reasoning that underlay the departure.
 
 
 17
 Moreover, the district court bypassed entirely the criminal history categories between VI and I in its desire to impose on Lanza-Chan a particular sentence. As we noted in Rusher,
 
 
 18
 [t]his cannot be done under the sentencing guidelines regime. Sentencing is not purely a matter of judicial discretion, but must be done by reference to the guidelines and their stated criminal history categories.
 
 
 19
 Id. at 883. The district court's conclusory statement that LanzaChan's previous offenses were sufficiently petty to warrant a downward departure does not allow us meaningfully to review the court's departure from the guidelines. At the very least, the court should decide what aspects of [the defendant's] criminal history it thinks the guidelines did not adequately consider in setting the criminal history category, and determine on the record whether these aspects are of sufficient importance and magnitude to justify a departure. Id. Once the court has decided to depart downward, it should refer first to the next lower category and allow itself to move on to a still lower category only upon a finding that the next lower category fails adequately to reflect Lanza-Chan's criminal history.
 
 III
 
 20
 Rusher, of course, dealt with an attempted upward, rather than a downward, departures from the sentencing guidelines, but we believe that the same basic rules should apply in either situation. In the preceding paragraphs we have rephrased the principles set forth in Rusher to make them fit downward departures. In fairness to the district court, it should be noted that we had not yet decided Rusher when Lanza-Chan was sentenced. While we question whether the district court properly could depart as many as five categories downward in an effort to reduce Lanza-Chan's sentence and still remain faithful to the spirit of the guidelines, we do not here review the court's substantive application of the guidelines. We simply remand the cause for resentencing in light of Rusher and the preceding discussion.
 
 VACATED AND REMANDED