27 F.3d 564
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maurice JOHNSON, Defendant-Appellant.
 No. 93-5792.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 17, 1994.
Decided June 15, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-93-198)
 Glen Trimper, Alexandria, Va., for appellant.
 Helen F. Fahey, U.S. Atty., Todd W. Robinson, Sp. Asst. U.S. Atty., Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Maurice Johnson appeals his conviction and sentence for attempted introduction of contraband into the Occoquan Facility of the Lorton Reformatory (Lorton), and possession with intent to distribute heroin. He contends that the district court erred in denying his motion to suppress evidence (the heroin) as inadmissible fruit of a search which violated his Fourth Amendment rights. Johnson further contends that the district court erred in refusing to depart from the applicable sentencing guidelines, claiming that his status as a career offender overexaggerated his criminal history. For the reasons set forth below, we affirm Johnson's conviction and sentence.
 
 
 2
 The charges against Johnson arose when two correctional officers seized a pink balloon containing ten small bags of heroin (1.243 grams) from Johnson's underwear during a search that occurred at Lorton after Johnson entered the facility to visit an inmate. On April 15, 1993, when Johnson entered Lorton, a large white sign was posted at the facility entrance that read: "The following items are prohibited into this institution: drugs...." Posted on the front door was another sign that read: "Any individual caught attempting to smuggle narcotics or any other contraband will be arrested and prosecuted to the fullest extent of the law and barred permanently from all D.C. Department of Correction facilities."
 
 
 3
 Upon entering the visitor's trailer, Johnson produced identification and provided the name of the inmate whom he was there to visit. He was then given an informational sheet which included the following statement: "[a] person entering this institution will be subject to a search. Any individual caught attempting to smuggle narcotics, contraband, or any other weapon will be arrested and prosecuted to the full extent of the law and is subject to imprisonment for more than ten years." Johnson proceeded through a metal detector, and entered the male "shakedown room" to be searched. The door to the room, the only means of egress, was closed.
 
 
 4
 Two officers, Corporals Randall Slade and Richard Price, were in charge of searching all male visitors prior to their entering the institution to visit an inmate. Once in the "shakedown room," Price asked Johnson to remove his personal items from his pockets, his jacket and shoes, and place them on the table. Johnson complied with these requests. Price then conducted a visual search of Johnson's mouth, and a visual and pat down search of Johnson's body. Price told Johnson that he was going to search his groin area.
 
 
 5
 While conducting a pat down search of Johnson's groin, Price felt what he believed to be a foreign object. When Price asked Johnson about the object, Johnson replied that it was nothing, and proceeded to voluntarily take down his sweat pants and underwear. At that time, neither Price nor Slade observed any contraband.
 
 
 6
 Johnson then pulled up his underwear and pants, and Price conducted a second pat down search of Johnson's groin area. Feeling the foreign object again, Price asked Slade to conduct a pat down search of Johnson's groin area. Slade did so, and also felt a foreign object in Johnson's groin. When asked again whether he had anything, Johnson replied that he did not. Johnson again voluntarily pulled off his pants, handing them to Price for inspection. While Price was examining the pants for contraband, Slade continued to observe Johnson. As Johnson moved to sit down, Slade observed a pink object in Johnson's underwear on his thigh and buttock, and yelled "I see it." Slade then attempted to reach for the object; Johnson resisted, and his underwear was torn in the struggle. Slade retrieved a pink balloon from Johnson's underwear. The balloon contained 1.243 grams of heroin in ten small bags.
 
 
 7
 * This Court reviews legal conclusions involved in the district court's suppression determination de novo, but reviews factual findings underlying the legal conclusions under the clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992).
 
 
 8
 Johnson alleges that the manner in which the search was conducted was "so intolerable in its intensity and scope" as to violate his Fourth Amendment rights. He further alleges on appeal, as he did below, that the search was beyond the scope required under the particular circumstances, was conducted "in the most intrusive means available to the officers," and "was conducted in a manner which shocks the conscience" (citing Bell v. Wolfish, 441 U.S. 520 (1979)).
 
 
 9
 As a primary matter, we find that Johnson consented to the search when he entered the prison.[1] He does not deny the existence of the series of signs and notices he received prior to the search. He voluntarily entered the shakedown room, and by his own admission, voluntarily consented to pat down searches, disrobing, and, possibly, a body cavity search. Johnson does not dispute that his access to Lorton was conditioned on his submission to a strip search. Moreover, both parties acknowledge that Johnson no longer was cooperating or consenting by the time Slade discovered the heroin.
 
 
 10
 A reasonable suspicion standard applies to strip searches of prison visitors. Daughtery v. Campbell, 935 F.2d 780, 787 (6th Cir.1991), cert. denied, 60 U.S.L.W. 3498 (U.S.1992); Hunter v. Auger, 672 F.2d 668, 674 (8th Cir.1982). We find that even if Johnson withdrew his consent prior to the correctional officer's action in grabbing the balloon from his thigh, thereby tearing Johnson's underwear, by that point, the correctional officers had a reasonable suspicion that Johnson was secreting contraband, and the search was reasonable.
 
 
 11
 In the context of an airport search, this Court has held that the Fourth Amendment does not require officers to desist at the very moment it has become plain that a consensual search has borne fruit. United States v. Haynie, 637 F.2d 227, 230-31 (4th Cir.1980), cert. denied, 451 U.S. 972 (1981). Any other rule would encourage contraband smugglers by providing an escape whenever detection was imminent. Id.; see also, United States v. DeAngelo, 584 F.2d 46, 47 (4th Cir.1978) (holding that persons voluntarily entering an airport screening process "acquiesce[ ] in its full potential scope" including physical inspection, if requested), cert. denied, 440 U.S. 935 (1979).
 
 
 12
 We find that the search in question, including the body cavity search, and the final action of grabbing the heroin from Johnson's person, was justified under the circumstances, and when weighed against Lorton's interest in eliminating the flow of narcotics into its facility. Accordingly, we affirm the district court's determination that the search was not unreasonable under the circumstances of this case, and its denial of Johnson's motion to suppress.
 
 II
 
 13
 Johnson claims that in sentencing him, the district court erred in not applying United States Sentencing Commission, Guidelines Manual, Sec. 4A1.3 (Nov.1992), which authorizes a downward departure from a "career offender" sentence if that status overstates the seriousness of the defendant's past conduct. Specifically, Johnson asserts that sentencing him as a career offender overexaggerated his past crimes which occurred during a six-month period when Johnson was in his late teens.[2] He also contends that the district court's application of the career offender provision resulted in a disproportionately severe sentence given the nature of the instant crime.
 
 
 14
 A defendant cannot appeal a trial court's discretionary refusal to depart downward unless the trial court's refusal is based on the mistaken belief that it lacks the authority to do so. 18 U.S.C.A. Sec. 3742 (West 1988 & Supp.1994); United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990). Here, the district court specifically stated that it was aware of its authority to depart downward in appropriate cases, but that it did not feel that such an action was appropriate in this case.[3] Finally, to the extent Johnson challenges his designation as a career offender pursuant to U.S.S.G. Secs. 4B1.1, 4B1.2 (Nov.1992), we find that his claim must fail. Johnson was at least eighteen years old at the time of the instant offense; the instant offense was a felony drug offense; and he had at least two prior convictions for violent felonies. Consequently, the district court properly determined that he was a career offender.
 
 
 15
 Accordingly, we affirm Johnson's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 It is undisputed that prison administrators have a high security interest in eliminating the smuggling of narcotics and other contraband into prisons. Hudson v. Palmer, 468 U.S. 517, 528 (1984). It is necessary for prison administrators to "take all necessary steps" to ensure the safety of prison staff, administrative personnel, visitors, and inmates. Id. at 526-27. Evidence was before the district court that one of the reasons prison visitors are searched at Lorton is to control the flow of drugs into the institution
 
 
 [2]
 These crimes include armed robbery and use of a handgun; auto theft, fleeing and eluding police, and failure to stop after an accident; and assault with intent to murder
 
 
 [3]
 Even if this Court could review the district court's discretionary refusal to depart downward from an applicable guidelines sentence, the district court's refusal to depart in this case was proper. U.S.S.G. Sec. 5H1.1 (Nov.1992), expressly provides that "age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." See also United States v. Summers, 893 F.2d 63, 69 (4th Cir.1990)