**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Larry Richard CHESTER, a/k/a Kevin Larry John, a/k/a Chester Parker, a/k/a Larry Parker, Defendant–Appellee.**

No. 90–5605.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1990.

Decided Nov. 30, 1990.

As Amended Dec. 6, 1990.

---

Thomas Jack Bondurant, Jr., Asst. U.S. Atty., Roanoke, Va. (John P. Alderman, U.S. Atty., Roanoke, Va., on brief), for plaintiff-appellant.

Harwell M. Darby, Jr., Glenn, Flippin, Feldmann & Darby, Roanoke, Va., for defendant-appellee.

Before HALL and MURNAGHAN, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

Larry Richard Chester, also known by several other names, pled guilty to possession with intent to distribute fifty or more grams of crack (cocaine base). At the age of twenty, Chester was no stranger to the judicial system. In 1988, he had assaulted his girlfriend and received one year probation. That same year, he had driven a rental car without permission and received sixty days imprisonment, of which he served forty days. The presentence report for Chester's crack possession advised an Offense Level of 38 and a Criminal History Category of III, resulting in a 292–365 months range of imprisonment. The judge found the Offense Level to be 32, the Criminal History Category to be II, and sentenced Chester to 144 months imprisonment. The government appeals only the

Criminal History Category II finding and seeks a remand for resentencing.

Because the district court did not state sufficient, valid reasons to warrant the downward departure of the Criminal History Category, we remand for resentencing as to the Criminal History Category. District court judges who confront possible departure situations should keep in mind and follow the appellate review analysis as very recently announced by the Fourth Circuit in *United States v. Hummer*, 916 F.2d 186 (4th Cir.1990).

## FACTS

During a July 10, 1989, police execution of a search warrant in Roanoke, Virginia, Chester tossed an aluminum can away from him. Hidden inside a false bottom of the can rested 10.45 grams of crack. The police seized the crack, a hotel room key, and $24,830. The police also found two handguns. With another warrant and the key, the police opened a hotel room registered to Chester (under the name "Kevin Johnson") and another man, Bennie Robinson. The room contained their personal belongings, fake identification, 185.60 grams of crack, and plastic baggies with cut-out corners. Later, the police obtained an additional two hundred dollars from Chester.

A federal grand jury indicted both men. In exchange for Chester's guilty plea to possession with intent to distribute fifty or more grams of crack, the conspiracy count was dismissed and the case against Robinson dropped.

The presentence report for Chester computed the total Offense Level at 38 and the Criminal History Category at III, leading to a sentence range of 292–365 months imprisonment. To establish the Offense Level, the probation officer applied a base level of 34 for possession of 50–499 grams of crack. She added two points for possession of a gun and two points under the Obstruction of Justice provision. She did not reduce under the Acceptance of Re-

sponsibility provision, and thus concluded with a level of 38.

To establish the Criminal History Category, the officer first considered criminal convictions. Disregarding several juvenile adjudications, U.S.S.G. § 4A1.2(d), she added one point for Chester's attempted assault on his girlfriend which had resulted in one year probation beginning October 7, 1988, U.S.S.G. § 4A1.1(b), and two points for unauthorized use of a motor vehicle which had resulted in a sixty-day sentence. U.S.S.G. § 4A1.1(b). (After serving forty days, Chester had been released on November 16, 1988.) Second, the probation officer added two points because the crack possession had occurred within the probation period, U.S.S.G. § 4A1.1(d), and one more point because the crack possession had occurred within two years of his prison release. The resulting six points translated into Criminal History Category III (4–6 points).

The district court judge first reviewed the Offense Level. Defendant's counsel argued that no evidence connected Chester with the guns and that his initial use of aliases had not obstructed justice. The judge declined to follow the report and did not add points for either reason. In addition, he found that Chester had accepted responsibility, thus lowering the Offense Level to 32.[1]

The district court next turned to the Criminal History Category. Defendant's counsel agreed that six points produced a III Category. He argued, however, that five of the points related to the rental car incident and that the resulting "snowball" effect on the Criminal History Category was unfair. The incident appears to have involved "someone else renting a car on his [Chester's] behalf and his use of that car." Defense counsel termed it "a felony joy ride." Counsel questioned the probation officer who had written the presentence report. She agreed that five points arose out of the "unauthorized use of a rental car

---

1. The Solicitor General did not give the United States Attorney permission to appeal the result-ing Offense Level.

situation." Counsel for Chester argued for a downward departure to Category II.

Denying any "snowball" effect, the government argued that the Criminal History Category should be increased above III because Chester admitted to having killed a man. The judge pointed out, however, that the grand jury never indicted him.

The judge decided on an Offense Level of 32. He then added, "And then I'm on shakier ground when we get to the criminal history category, but I'm going to make a factual finding that his criminal history category is two rather than three." The resulting range was 135–168 months. He sentenced Chester to 144 months in prison, five years supervised release, and a fifty dollar assessment. The judge concluded, "And twelve years without parole is a long time for a twenty year-old boy."

The government has appealed the district court judge's finding of Criminal History Category II.

### DISCUSSION

The case involves more than the sometimes bruited complaint that a district court judge was too soft-hearted. The case requires us to address the analysis to guide district court decisions about departure from the Guidelines and appellate court review. We take the opportunity to clarify any uncertainty or confusion which may exist.

In the briefs, both sides have argued that the appellate court need not address the departure issue. The government has contended that the appeal "involves the district court's failure to apply the Sentencing Guidelines and is not a departure case *per se*." Chester has taken the position that the district court properly sentenced him according to the Guidelines.

■ But we cannot simply rely on such apparent harmony in determining whether there was a departure. According to simple counting, the district court did not apply the most obvious conclusion of the Guidelines. The five points did not relate exclusively to the rental car. One point was for the assault. The report states that the probation period attached to the assault, not the car incident. Moreover, two points were added on because the crack possession occurred during probation. (Defense counsel and the judge appear to have believed that the probation period attached to the car, when, in fact, the period grew out of Chester's conviction for attempting to assault his girlfriend.) Thus, Chester qualified for three points because of the crack and assault incidents, and even adding only one point for the car incident, Chester falls into Category III. Moreover, the Sentencing Guidelines do not appear to permit a district court judge to find that, as a factual matter, the Criminal History Category should be adjusted. A judge may depart from the Guidelines given certain circumstances; however, a judge may not stray from the Guidelines on the basis of an unjustified factual assessment. *Cf. United States v. Mejia–Orosco*, 867 F.2d 216, 219, *clarified on reh'g*, 868 F.2d 807 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989) (discussing clearly erroneous appellate review of district court's finding of fact).

■ Consequently, because the district court judge failed to adhere to the Guidelines, we must test what he did on the basis that he intended to depart from the Guidelines. Although the district court judge never stated, "I am going to depart," Chester's attorney argued moments before the sentencing decision:

The arithemtic [sic] does indicate a three (3), but I think in the sense of just fairness I would like the court to consider, just given the harsh snowball effect of that unauthorized use charge, that the Court would consider a motion to depart from the Guidelines for the purposes of assigning a criminal history category and consider going down one to category two (2).

It is beyond dispute, especially bearing in mind the acknowledgment of Chester's counsel as to the correct arithmetic, that the judge followed counsel's suggestion.

We proceed to next consider the case as a departure case. The parties offer differ-

ent procedures for departure decisions. Chester has proposed three different standards. First, he has advanced a three-factor test also proposed by the government.[2] Second, he has noted a two-prong test suggested by Judge Wilkins in a law review article, *Sentencing Reform and Appellate Review*, 46 Wash. & Lee L.Rev. 429 (1989). Third, he has pointed to the reasonableness test used by the Second Circuit.[3] The government has proposed following a three-step process established by the First Circuit.

■ While statements in other, earlier cases have apparent verbal inconsistencies, we are satisfied that the test is properly and comprehensively stated in *Hummer*. *See also United States v. Lira–Barraza*, 897 F.2d 981, 983–83 (9th Cir.1990), *reh'g granted*, 909 F.2d 1370 (1990); *United States v. Rodriquez–Castro*, 908 F.2d 438 (9th Cir.1990); *United States v. Pearson*, 911 F.2d 186 (9th Cir.1990). As phrased in *Hummer*, the test is expressed as follows:

> [F]irst examine *de novo* the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C.A. § 3553(b) (West Supp.1990). If the sentencing court identified one or more factors potentially

warranting departure, we apply a clearly erroneous standard and review the factual support in the record for those identified circumstances. Upon ascertaining that there is an adequate factual basis for the factors, we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines range "should result." *Id.* Similarly, we apply an abuse of discretion standard to determine if the extent of departure was reasonable.

*Hummer*, 916 F.2d at 186, 192.

We apply *Hummer* to Chester's case. We first ask whether the district judge adequately identified the specific reasons which might justify departure. We engage in *de novo* appellate review. The parties have not addressed the point, concentrating instead on whether or not, for factual reasons, the judge should have departed.

The government has argued that the direction and degree of departure were unreasonable. In its view, Chester's background, with three uncounted juvenile convictions and two other possible charges of assaults involving weapons,[4] deserved an upward departure. Furthermore, to the extent that the district court judge based his decision on Chester's age, the government maintained that the decision was illegitimate, because age has been explicitly

---

**2.** The test has been adopted by the First, *see United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, ── U.S. ──, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); the Sixth, *see United States v. Rodriguez*, 882 F.2d 1059, 1067 (6th Cir.1989), *cert. denied*, ── U.S. ──, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); the Seventh, *see United States v. Williams*, 901 F.2d 1394, 1396–97 (7th Cir.1990), *petition for cert. filed*, No. 90–5849 (Oct. 1, 1990); the Eighth, *see United States v. Whitehorse*, 909 F.2d 316, 318 (8th Cir.1990); *United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir.1990); the Tenth, *see United States v. Jackson*, 903 F.2d 1313, 1316–17 (10th Cir.1990); *United States v. White*, 893 F.2d 276, 277–78 (10th Cir.1990) (excellent summary of the procedure), and the D.C. Circuits, *see United States v. Burns*, 893 F.2d 1343 (D.C.Cir.1990), *cert. granted*, ── U.S. ──, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990). The Eighth Circuit in *United States v. Crumb*, 902 F.2d 1337, 1339 (8th Cir.1990), after deciding to follow the three-part

test, noted that the "Fourth Circuit has also applied similar standards in reviewing a downward departure." *See also United States v. Ocasio*, 914 F.2d 330 (1st Cir.1990) (citing the Fourth Circuit test as in accord with the First Circuit's test).

**3.** *See United States v. Sturgis*, 869 F.2d 54, 57 (2d Cir.1989); *United States v. Sanchez*, 893 F.2d 679, 681 (5th Cir.1990); *United States v. Velasquez–Mercado*, 872 F.2d 632, 637 (5th Cir.), *cert. denied*, ── U.S. ──, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989).

**4.** The government states that Chester fled South Carolina without standing trial on charges of assault and battery with intent to kill and possession of an unlawful weapon. In addition, a New York conviction for a weapons charge did not enter the sentencing calculation because New York had not yet sentenced him.

considered and rejected as a basis for sentencing under the Guidelines system. *See United States v. Summers,* 893 F.2d 63, 69 (4th Cir.1990).

█ Chester, on the other hand, has contended that the district court's decision met the broad standard of a reasonable departure. The snowball effect that the car conviction had on his sentence he asserts as the "mitigating circumstance." The case falls within a Commission-identified departure: the defendant's "criminal history was significantly less serious than that of most defendants in the same criminal history category." U.S.S.G. § 4A1.3. Moreover, the judge made a reasonable departure, opting for 144 months out of Category II's 121–151 month range. In addition to the snowball effect rationale, Chester also argues that a court can depart to prevent the defendant from becoming a career criminal. Furthermore, the mention of age by the judge should not bar a judge's departure when other factors also are considered.

We need not respond in detail. The district court judge did not adequately identify the "aggravating or mitigating circumstance." Although Chester's arguments regarding the judge's rationales may or may not be plausible, the judge never has said anything one way or the other on that initial point. Therefore, we must vacate and remand.

Hence, we remand the case to permit the district court to establish reasons for its finding with respect to the Criminal History Category. Of course, the rest of the sentencing procedure need not be disturbed. The district judge should identify the aggravating or mitigating circumstance, ascertain whether the circumstance actually existed, decide whether the Sentencing Commission adequately took the circumstance into consideration, determine whether the circumstance should be a basis for departure, and make a reasonable and clearly explained departure.

REMANDED.