UNITED STATES of America, Plaintiff–Appellant,

v.

Andre WRIGHT, Defendant–Appellee.

No. 90–5653.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1990.

Decided Jan. 31, 1991.

William G. Otis, Sr. Litigation Counsel, argued (Henry E. Hudson, United States Atty., on brief), Alexandria, Va., for plaintiff-appellant.

Alan Hideto Yamamoto, Fairfax, Va., for defendant-appellee.

Before MURNAGHAN and WILKINSON, Circuit Judges, and NORTON, District Judge for the District of South Carolina, sitting by designation.

MURNAGHAN, Circuit Judge:

Appellee, Andre Wright, an inmate at the Lorton Reformatory at Lorton, Virginia, was indicted in the United States District Court for the Eastern District of Virginia and charged with several offenses, all arising from his possession, with intent to distribute, of less than five grams of cocaine and "crack" cocaine. Wright and the government reached an agreement under which Wright pleaded guilty to Count I, alleging possession with intent to distribute "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1), and the government moved to dismiss the remaining four counts. The agreement was accepted in open court. A presentence report ("PSI") was prepared which designated Wright a Career Offender, U.S.S.G. § 4B1.1, with a sentencing range of 168–210 months' imprisonment. The court, however, granted a downward departure of no less than 120 months, based solely upon a 26–month deferral of parole for unrelated crimes. He thus sentenced Wright to 48 months. The government has appealed.

1. In fact, Wright was 27 years old.

On March 6, 1989, Sergeant Francis Charles, a correctional officer at Lorton, received information that Wright was dealing cocaine in Dormitory F. Sergeant Charles and Corporal Alfred Badua found Wright and took him to his living area within the dormitory. As Charles began a pat down search, Wright bolted toward the front of the dormitory. He ran full speed into Officer Bernard Hall, causing both men to fall to the floor. Wright was subsequently subdued.

Sergeant Charles searched Wright and seized from his groin area 21 packets of suspected "crack" cocaine and several hundred dollars in cash. Corporal Badua also seized two keys from Wright's pockets. With the assistance of another officer, Badua found two lockers in Dormitory F which the keys would open. One of the lockers yielded a vitamin bottle containing 25 small packets of suspected cocaine.

The substance seized from Wright's person was found to be approximately one and one-quarter grams of 97% pure cocaine base, commonly known as "crack." The substance seized from the locker was found to be slightly less than one gram of 47% pure cocaine.

The PSI denominated Wright a Career Offender, noting that he was at least 18 years old at the time of the offense;[1] that his present conviction was for a controlled substance felony; and that he had at least two prior felony convictions for controlled substance offenses. Accordingly, the Probation Department calculated Wright's sentence at an offense level of 30, with a Criminal History Category of VI, yielding a sentencing range of 168–210 months.

Wright did not dispute the calculations, either in his written Position with Respect to Sentencing Factors, or in allocution before the sentencing court. Instead, he requested a downward departure based on his view that "the career offender guidelines result in overkill." His counsel noted that Wright "was able to get drugs in Lorton to support his habit. He sold drugs to be able to afford drugs for his personal

use. He wasn't out to make a profit, just support his habit." In other words, Wright was "not the drug dealer who is out to make money by selling drugs throughout the neighborhood. [He] is really the end user who also happens to sell some of his drugs to be able to afford to get more drugs for his personal use." Thus, the defense reasoned, the Career Offender provision should not apply, because it was intended "to stop the drug pusher, the dealer who is out to make money and sell lots of drugs."

At allocution, Wright pursued much the same theme. The court interjected, questioning defense counsel as to what had happened to Wright's parole eligibility date as a result of the instant conviction. The court noted that the date was originally set for March 10, 1989 (four days after the offense in this case), but "has now been postponed, apparently, pending the outcome of this proceeding." Defense counsel told the court that Wright had been informed that he would continue serving his pre-existing sentence "to a short term parole date at the latest"—in other words, until July 1991.

The government opposed any downward departure, arguing, *inter alia*, that Wright had not two, but five, prior drug-related convictions, and that the postponement of his parole date was based on other disciplinary actions and not solely on the conduct that underlay the offense here involved. The court responded by asking the prosecutor whether he would concede that "14 years [the minimum 168 month sentence] for 1.24 grams of 'crack' and .94 grams of cocaine is a substantial sentence." The prosecutor replied that a drug courier with no prior record would face a ten-year mandatory minimum, and that for a recidivist like Wright, Congress mandated punishment at or near the maximum.

The court imposed a sentence of 48 months' imprisonment, representing a downward departure of ten years. The court stated that it did not regard the 168-month minimum under the Career Offender provision as "appropriate." The sole reason given for the departure was, "This

defendant has been punished administratively by a set off of his parole eligibility date for about 16 months."

In *United States v. Chester*, 919 F.2d 896 (4th Cir.1990), we held that in considering a departure for fixing a sentence where Sentencing Guidelines were not explicit, "[t]he district judge should identify the aggravating or mitigating circumstance, ascertain whether the circumstance actually existed, decide whether the Sentencing Commission adequately took the circumstance into consideration, determine whether the circumstance should be a basis for departure, and make a reasonable and clearly explained departure." *Id.*, at 901. *See also* 18 U.S.C. § 3553(b), which requires a court to impose a sentence within the Guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

The government here has expressed dissatisfaction with Judge Bryan's 10-year departure downward. It has focused on three of the *Chester* test's elements: first, whether the Sentencing Commission did take parole deferral into consideration when it drafted and promulgated the Guidelines; second, even if the Commission did not, whether parole deferral is of sufficient importance to serve as the basis for departure downward; and third, even if parole deferral could serve as such a basis, whether the 10-year downward departure was unreasonable.

■ *De novo* review applies to the question of whether the Sentencing Commission adequately took parole deferral into consideration in formulating the Guidelines. *United States v. Hummer*, 916 F.2d 186, 192 (4th Cir.1990).

The government has argued that the sentencing court did not find—nor could it have found—that the Commission failed to consider the "universally known" fact that administrative action may result from an inmate's committing a felony while he is

incarcerated. In support of that contention, the United States has cited, by analogy, two other cases in which the court found it impossible to believe that the Commission was unaware of a particular factor. In *United States v. Goff*, 907 F.2d 1441 (4th Cir.1990), we held to be improper a district court's decision to depart downward based, *inter alia*, on the fact that one of the defendants took her drug-trade profits in cocaine rather than cash, stating, "[I]t is well known in the drug trade that some of those involved prefer to take their 'cut' in kind, particularly if they are supporting a habit of their own. Thus, it is unlikely that the Sentencing Commission did not adequately take this circumstance into consideration in promulgating the guidelines." *Id.* at 1446.[2] And in *United States v. Van Dyke*, 895 F.2d 984 (4th Cir.1990), we found a decision to depart based upon the defendant's pre-sentence participation in a drug rehabilitation program to be improper and, by examining other "equivalent" examples of rehabilitative conduct in the Commentary to section 3E1.1 of the Guidelines (Acceptance of Responsibility), ruled that, by implication, the Commission had adequately considered drug rehabilitation as a mitigating circumstance. *Id.* at 986–87.

■ Wright has offered an argument as to why parole deferral was not adequately considered by the Commission which actually buttresses the government's contention. He has pointed to the legislative history of the Sentencing Reform Act of 1984 to contend that only parole as it pertained to the case pending sentencing was adequately taken into consideration. *See* S.Rep. No. 225, 98th Cong., 2nd Sess. 46–57, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3229–3240. There the Congress considered elimination of the Parole Commission as part of amending federal sentencing procedures, pointing out that "the existence of the Parole Commission invites judicial fluctuation by encouraging judges to keep the availability of parole in mind when they sentence offenders." *Id.* at 3229. Congress was also concerned that "parole guidelines frequently fail in practice to achieve their goal of reducing unwarranted sentencing disparities." *Id.* at 3231. In short, "the present practices of the Federal courts and of the Parole Commission clearly indicate that sentencing in the Federal courts is characterized by unwarranted disparity and by uncertainty about the length of time offenders will serve in prison." *Id.* at 3232.

Wright has emphasized that nowhere in the discussion for sentencing guideline purposes of the Parole Commission's elimination is reference made in explicit terms to a concern about courts considering parole deferral in an *unrelated* case as a factor justifying downward departure. Thus, he has asserted, such a circumstance was not adequately considered by the Commission.

Wright's conclusion is somewhat disingenuous and perhaps, to an extent, illogical. Congress was obviously concerned about the sentencing disparities caused by the interplay of sentencing decisions made by judges and by parole bodies, the very interplay at issue here. Wright cannot escape the clear legislative intent behind the Guidelines to eliminate such disparities through so narrow a distinction as a parole decision made regarding a different crime. Thus, the government here has made out an even stronger case for adequate consideration by the Sentencing Commission than it had in either *Goff* or *Van Dyke*. So the departure fails the "adequate consideration" element of the *Hummer–Chester* departure test.[3]

---

2. The *Goff* court went on to rule that a departure on a payment-in-kind basis also failed the second prong of the test enunciated in *United States v. Summers*, 893 F.2d 63 (4th Cir.1990), because "[t]he fact that a defendant is paid in kind rather than cash ... does not mean that a 'sentence different from the guidelines sentence "should result[.]"'" *Id.* at 66.

3. Wright also has contended that the district court here departed downward on the basis of the small quantity of drugs involved. In an unsupported statement, he claims that "the district court is not stripped of all powers to depart, and in this instance, the district court was obviously disturbed about the inequity of a 14 year sentence for possession of such a small quantity of drugs. Appellee submits that departure was warranted."

Turning to parole deferral as a basis for departure, and assuming, *arguendo*, that Wright's citation to the legislative history of the Sentencing Reform Act of 1984 could somehow support his contention that the Guidelines Commission did not adequately consider parole deferral for an unrelated crime as a factor warranting departure, we must next apply an abuse of discretion standard to determine if, on balance, the cited departure factor is of sufficient importance that a sentence outside the Guidelines range "should result." *Hummer*, 916 F.2d at 192.

The very legislative history upon which Wright relies to satisfy the adequate consideration prong of the *Hummer–Chester* test, however, leads inevitably to the conclusion that a sentence outside of the Guidelines range clearly should *not* result.

As earlier mentioned, in considering the abolition of the Parole Commission as part of the Sentencing Reform Act of 1984, Congress clearly intended to put to rest the practice leading to sentencing discrepancies arising out of the sentencing judge's and the Parole Commission's efforts to second guess one another. *See* S.Rep. No. 225, 98th Cong., 2nd Sess. 38–39, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3221–22. To argue that a more lenient sentence "should result" when the second guessing concerns a parole decision involving an earlier crime turns the Congressional mandate on its head.

■ Consideration of parole deferral as a factor justifying leniency in sentencing also undermines the Congressional intent behind the Guidelines of meting out more severe punishments to career offenders. In setting forth the duties of the Sentenc-

ing Commission in 28 U.S.C. § 994, Congress specifically required that career offenders be sentenced at or near the maximum term allowed under the Guidelines. 28 U.S.C. § 994(h). And the Commission took note of that mandate in writing the Career Offender guideline. *See* U.S.S.G. § 4B1.1, Background Note. Thus, the postponement of an inmate's parole date because he has been selling drugs in prison simply cannot constitute a reason that an especially lenient sentence "should result" when the inmate is caught and convicted for repeating the same behavior that brought him to prison in the first place. If anything, a defendant's persistence in repeated criminal behavior might well dictate that a more severe sentence "should result."

Finally, the government has attacked the 120–month departure for a 26–month [4] parole deferral as unreasonable. We apply an abuse of discretion standard to so determine. *Hummer*, 916 F.2d at 192.

■ Wright and the government have agreed that "no consensus has emerged for measuring the reasonableness of the extent of a departure," and that various circuits have devised their own standards. *See, e.g., United States v. Lira–Barraza,* 897 F.2d 981 (9th Cir.1990) (departure should be measured by previous caselaw approving or rejecting similar departures); *United States v. Pearson,* 900 F.2d 1357 (9th Cir.1990) (departure should be measured by analogy to the Guidelines); *United States v. Kim,* 896 F.2d 678 (2d Cir.1990) (departure should be measured by considering offense levels in sequence; *i.e.,* by asking whether the next higher level or levels

---

Such a factor cannot survive even the first prong of the *Chester* test: that the district judge should identify the aggravating or mitigating circumstance. The record shows that, although the court engaged government counsel in a colloquy regarding the amount of crack involved, it ended the discussion by stating, "I don't think [188 months] is appropriate. This defendant has been punished administratively by a set off of his parole eligibility date for about 16 months. And I think downward departure is warranted." And in its written findings and reasons dated March 30, 1990, the court identi-

fied only the parole deferral as the factor justifying departure.

Even if the court had so identified the length of sentence as a factor, the factor cannot possibly withstand *de novo* scrutiny under the "adequate consideration" prong of *Hummer–Chester.* The factor is basic generally to punishments set forth in the guidelines.

4. At allocution, the district court indicated that Wright's parole eligibility date had been deferred "about 16 months." The date was actually deferred from March 10, 1989, to July 16, 1991, a period of 26 months.

adequately reflect the factor warranting departure); *United States v. Schmude*, 901 F.2d 555 (7th Cir.1990) (depart by reference to the structure of the Sentencing Table).

Disparity, if any, among the circuits regarding the proper reasonableness standard for departure need not occasion concern here, because a departure downward of 120 months for a 26–month parole deferral is simply unreasonable under any standard. In addition, since the district court offered no explanation for the departure which might have shed some light on the reasonableness, remand for resentencing at the very least is imperative.

However, considering the "adequate consideration" and "should result" prongs of the *Hummer–Chester* test, vacating of the sentence and remanding the case for recalculation consistent with this opinion, since the downward departure was unjustified, is the appropriate relief. The downward departure was unjustified in whole or in part. The judgment is accordingly

VACATED AND REMANDED.