936 F.2d 568
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
Marilyn Louise HARRELL, Defendant-Appellant.
 No. 90-5357.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1991.
Decided July 2, 1991.
As Amended Aug. 26, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CR-89-451-HM)
 Anthony Reed Gallagher, Federal Public Defender's Office, Baltimore, Md., (argued), for appellant; Fred Warren Bennett, Federal Public Defender, Beth M. Farber, Assistant Federal Defender, Baltimore, Md., on brief.
 Gary Patrick Jordan, first Assistant United States Attorney, Baltimore, Md., (argued), for appellee; Breckinridge L. Willcox, United States Attorney, Jamie M. Bennett, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, CHAPMAN, Senior Circuit Judge, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This case is a criminal prosecution that involves one of the many episodes of the problems that have beset the Department of Housing and Urban Development ("HUD") for the past several years. The appellant (defendant below) is Marilyn Harrell, and for a period of years between 1985 and 1990, she and her company, Processing Title & Escrow, Inc. ("PTE"), entered into contracts with HUD to collect and remit to the federal government the net proceeds from the sales of HUD-owned properties. She served faithfully in this relationship for a period of years, but as with many others in her position, she found the lure of the large amount of money, with which she was entrusted, irresistible--especially in light of the relative ease with which she could misappropriate the funds in her possession. Consequently, over a lengthy period of time, the appellant engaged in a sophisticated scheme to embezzle money rightfully belonging to the United States government.
 
 
 2
 Pursuant to her criminal scheme, the appellant began dipping periodically into the funds she held in escrow accounts for the federal government. She would always keep enough money in the overall account so that she would be able to meet her payment obligations individually as they became due, but she paid accounts that became due with money that came from different accounts. In other words, the appellant kept afloat by paying the federal government the amount that it was due for the sale of one property with money from the sale of an unrelated property. As with all circular schemes of this sort, it was only a matter of time before the perpetrator would get caught, and this happened, in the Fall of 1988, when HUD demanded the immediate payment of $1.2 million that the appellant was supposed to be maintaining in an escrow account for the federal government. The appellant was not able to cover this amount with other funds at her disposal, and as a result, the game was up. She attempted to find a way out of her dilemma through various forms of deceit, but all of her efforts were unsuccessful, and she was indicted for a variety of misappropriation charges.
 
 
 3
 After the initiation of the criminal case against her, the appellant apparently had a change of heart, and she decided to "come clean." She confessed completely to federal authorities. Against the advice of counsel, she disclosed in minute detail the workings of her company and how she was able to misappropriate funds with relative ease. She told federal authorities that, in total, she had misappropriated between five and ten million dollars, and she appeared on her own volition and without any type of immunity grant, and again against the advice of counsel, before a congressional sub-committee investigating fraud and graft within HUD. In light of these demonstrations of mea culpa, the appellant pled guilty, pursuant to a plea agreement, to some of the criminal charges against her.
 
 
 4
 On June 22, 1990, the appellant appeared before Senior United States District Judge Herbert F. Murray for sentencing. A pre-sentence report had been prepared in the case, and the parties had also submitted memoranda to Judge Murray on the subject of sentencing. After considering this information and hearing from counsel, Judge Murray made the relevant computations pursuant to the Sentencing Guidelines. He denied the defense's motion for a downward departure due to the appellant's exceptional acceptance of responsibility and due to her donation of an amount of her ill-gotten gains to charity. He then granted the prosecution's motion for the court to apply an enhancement provision, pursuant to the Sentencing Guidelines, for substantial interference with a governmental function, and he granted the prosecution's motion for an upward departure due to the scope and magnitude of the theft involved. Consequently, Judge Murray sentenced the appellant to 46 months of incarceration, and this appeal followed in which the appellant cites four alleged errors committed by the court below. Each of the various assignments of error will be addressed seriatim.
 
 I.
 
 5
 As her first assignment of error, the appellant argues that Judge Murray erred in departing upward from the sentence "recommended" by the Sentencing Guidelines due to the "scope and magnitude" of the appellant's crimes. According to the appellant, a judicially created upward departure is only appropriate when the Sentencing Guidelines fail to take into account an aggravating factor in formulating the prescribed sentence. The appellant argues that, because there is an automatic enhancement pursuant to the Sentencing Guidelines when more than five million dollars is involved, Judge Murray's upward departure was repetitive and improper. In other words, Judge Murray departed upward in fixing the appellant's sentence for a factor that is, in the appellant's view, already taken into account by the Sentencing Guidelines, and such further upward departure is not properly within the discretion of the trial judge.
 
 
 6
 In response, the appellee argues that Judge Murray's upward departure for the scope and magnitude of the appellant's crimes was proper because the Sentencing Guidelines themselves indicate that a proper ground for such departure, among others, is when the amount of money involved is not adequately reflected in the prescribed sentence. As support for this position, the appellee notes that the Sentencing Commission amended the Sentencing Guidelines after the appellant's sentencing to enhance statutorily the sentences that are prescribed when large amounts of money, as in the present case, are involved. Additionally, the appellee notes that Judge Murray departed from the Sentencing Guidelines in fixing the appellant's sentence due to the "scope and magnitude" of the appellant's crimes. (Emphasis added). On this basis, the appellee suggests that Judge Murray's decision was also based on the continuity and breadth of her criminal scheme for an extended period of time. As a result, the appellee asks this court to affirm his upward departure.
 
 
 7
 We find the appellee's last argument dispositive on this appeal. In analyzing the arguments of counsel objectively, it should be remembered that, during the sentencing hearing, Judge Murray stated that he was departing upward from the Sentencing Guidelines due to the "magnitude and scope" of the appellant's crimes. (Emphasis added). In the sentencing hearing itself, four witnesses came forward to testify for the defendant, and their testimony clearly indicated a small portion of the scope of the enterprise in which the appellant was engaged. These four stated that the money which they received was for humanitarian and charitable purposes to protect and rehabilitate the homeless, etc. Significant in the testimony is the frequency with which these four apparently approached the appellant for additional funds. Without making a count, the four testified to something on the order of over fifty occasions when they approached the appellant for additional monies over the period of their association with her. Obviously, this is only a small part of the appellant's overall enterprise, but it gives an indication of the scope of the embezzlement. As the court below relied, not only on the magnitude of the theft, but also on the extent, breadth and continuity (or "scope") of the appellant's criminal conduct as grounds for its actions, the district court had a legitimate basis for an upward departure pursuant to the Sentencing Guidelines. Therefore, we affirm the decision of Judge Murray and overrule this assignment of error.
 
 II.
 
 8
 As her second assignment of error, the appellant contends that Judge Murray erred in applying an enhancement provision, pursuant to the Sentencing Guidelines, for her alleged substantial interference with an important governmental function. According to the appellant, this enhancement provision, because it could apply to almost any crime and does not put an individual on notice concerning the consequences of his actions, is void for vagueness and should be held unconstitutional by this court. Alternatively, the appellant argues that, even if this provision is not void for vagueness, the facts of the present case do not justify its application by Judge Murray. Therefore, the appellant asks this court to remand the case for re-sentencing without the application of this enhancement provision.
 
 
 9
 In response, the appellee maintains that the provision is not void for vagueness and has been consistently and appropriately applied by the courts. Furthermore, the appellee contends that Judge Murray properly applied the enhancement provision in this case. As a result, the appellee asks this court to overrule this assignment of error and affirm the sentence imposed in the district court below.
 
 
 10
 With any void-for-vagueness argument, the court's analysis must begin with the provision in question. Guideline 5K2.7 of the Sentencing Guidelines states:
 
 
 11
 If the defendant's conduct resulted in a significant disruption of a government function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the government function affected. Departures from the Guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases[,] interference with a government function is inherent in the offense, and unless the circumstances are unusual[,] the Guidelines will reflect the appropriate punishment for such interference.
 
 
 12
 The appellant contends that this provision is so vague and ambiguous that it could apply to almost any conduct. For instance, the appellant argues that someone who murdered a postman could have his sentence enhanced pursuant to this provision. While the postman's activities are undertaken as a function of government, and while the postman's death would disrupt the discharge of that function, reflection on the "nature and extent of the disruption and the importance of the government function affected" shows the fallacy of appellant's example here. The example is simply not apposite to the facts of this case and to those of other cases where the enhancement has been effected.
 
 
 13
 In short, we disagree with appellant's argument. We do not think that this provision is vague. The case law indicates that it was appropriately applied in the court below. See United States v. Garcia, 900 F.2d 45 (5th Cir.1990) (the major theft of mail is an appropriate instance for the application of this provision); United States v. Murillo, 902 F.2d 1169 (5th Cir.1990) (conspiracy to sell numerous illegal immigration documents is a proper instance for the application of this provision).
 
 
 14
 The appellant principally relies on United States v. Kikumura, 918 F.2d 1084 (1990), as support for her argument. In that case, the Third Circuit held that a defendant who was convicted of attempted terrorism could not have his sentence enhanced pursuant to this provision. The Third Circuit believed that to allow enhancement in the Kikumura case would be the equivalent of enhancing a sentence due to the political component of the underlying offense. Kikumura, however, does not stand for the proposition that the provision in question should be regarded as void for vagueness. The provision in question is clear; it should apply, in cases like the present one, where there has been a significant frustration of the normal day-to-day operation of government. Finally, all of the cases in which various provisions have been struck down on due process grounds due to their vagueness have been egregiously ambiguous. We do not find the provision at issue in the present case to be ambiguous.
 
 
 15
 Regarding the appellant's assertion that this case does not warrant the application of this enhancement provision even if the court rules that it is not void for vagueness, we will not go further than to say that unequivocally this is the type of case for which the provision in question was designed. The appellant misappropriated a significant sum of money from the federal government. This money was not available for use on legitimate projects, and significant resources were spent in discovering the appellant's breach of trust and in seeking recovery of the federal government's converted funds. The record is replete with the fact that auditing procedures had to be undertaken in an effort to determine the amount of the embezzlement, and that the employees of HUD had the unenviable task of sorting out which properties should be forfeited, etc. In fact, it appears that it took a period of something over 12 months in order to work out the appropriate disposition of properties which had been sold, and for which the sales proceeds had been embezzled, rather than tendered to HUD. This court can find no basis for disagreeing in any way with the conclusion of the court below that there was a substantial interference with an important governmental function.
 
 III.
 
 16
 As her third assignment of error, the appellant contends that the trial court erred in refusing to grant her motion for a downward departure due to her contribution of a significant sum of the misappropriated funds to various charitable institutions. During the sentencing hearing, however, Judge Murray stated that he considered this fact as counselling in favor of leniency, but he noted that this one fact was not alone dispositive and that the amount claimed by the appellant to have been donated to charity was only a percentage of the amount that she converted to her own use. As a result, he denied the appellant's motion for a downward departure. Judge Murray's decision is entirely in conformity with a recent Fourth Circuit case, United States v. McHan, 920 F.2d 244 (1990), in which the court affirmed a lower court's decision not to depart downward from a sentence due to the defendant drug dealer's donation of some of his improper gains to charity. In short, Judge Murray's decision was proper and is affirmed by this court.
 
 IV.
 
 17
 As her fourth assignment of error, the appellant claims that the district court erred in not departing downward in the sentence that it imposed due to the appellant's extraordinary acceptance of responsibility. As a usual practice, such decisions by a district court are not appealable unless the district court erroneously thought that it did not have the authority to depart downward. United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.1990), cert. denied, 111 S.Ct. 65 (1991). In the present case, there is no indication that Judge Murray believed that he had no authority to depart downward, nor did he indicate any desire to depart downward because of the appellant's cooperation. In fact, Judge Murray noted that, while the appellant's acceptance of responsibility was very good, it was a long time in coming and was not as comprehensive as she seems to think. We can find nothing that the trial court said or did to make one think that this court should reverse the decision below based upon this assertion of error. Accordingly, the Bayerle doctrine prevails, and we affirm the decision of Judge Murray on this point of appeal.
 
 V.
 
 18
 For the reasons indicated, the sentence of the court below imposed on the appellant is found to be without error and is
 
 
 19
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 20
 The Introduction to the Sentencing Guidelines states, "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." U.S.S.G. Sec. 1A4(b). Such consideration, however, may not become, in essence, an automatic rubber stamp on the government's motion for upward departure whenever the slightest "distinguishing" element appears in the defendant's criminal conduct or the defendant's behavior is not of the sort the judge has previously confronted. In the present case, the Guidelines do not support an upward departure based on the district judge's conclusion that "the magnitude and the scope" of Harrell's embezzlement was "the greatest amount" he had "ever encountered" in eighteen years as a federal judge.
 
 
 21
 In part I, the majority upholds the district judge's upward departure arguing that "the court below relied, not only on the magnitude of the theft, but also on the extent, breadth and continuity (or 'scope') of the appellant's criminal conduct...." Slip op. at 5. The district court's entire statement of the reasons for the upward departure was:
 
 
 22
 The Court feels that an upward departure is warranted in this case for two reasons, one, the fact that there was a disruption of governmental function. Your counsel, Mr. Gallagher, maintains that there isn't any evidence of that. I think when you look at this whole case, it would be impossible to conclude that there wasn't any severe disruption of the governmental function. I can't visualize any government agency that wouldn't have a disruption of function.
 
 
 23
 Further, when you made known your defalcation, at a minimum there was the disruption with an investigation of which you brought to the attention to the authorities and also all that is involved in handling and evaluating the forfeiture of properties that were at least due the government in an effort to make up the loss. Similarly when you consider the guideline levels for certain offense characteristics, it is the Court's view, as originally thought by the commission, they are inadequate to reflect the magnitude and the scope of the crime here, as I have indicated, the greatest amount as far as embezzlement is concerned that I have ever encountered in what now has been 18 years as a federal judge.
 
 
 24
 In seeking to uphold the judge's use of the word "scope," on the basis of facts to which he never referred, the majority attempts to deemphasize the judge's concern with the "magnitude" of the crime, as indicated by his phrase, "the greatest amount," and focus attention on the more amorphous concept of "scope."
 
 
 25
 As a preliminary matter, I note that the district judge never suggested that the "scope" of the theft involved the size or frequency of Harrell's charitable contributions with the embezzled funds. Yet the majority points to four witnesses who had testified on behalf of Harrell at the sentencing hearing about those donations. Although United States v. McHan, 920 F.2d 244 (4th Cir.1990), prevents Harrell from obtaining a reduced sentence because of the charitable donations to which those witnesses referred, the government and the majority do not supply any authority suggesting that a crime is more egregious because the defendant gave the fruits of the crime away to the poor and needy. The testimony of the four witnesses gives little, if any, evidence of the "scope" of the crime.
 
 
 26
 The majority's reliance on those witnesses may arise from its apparent realization that an upward departure in Harrell's case could be based neither on "magnitude" nor on "scope" as used by the district court because both factors were "adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. Sec. 3553(b); see United States v. Wright, 924 F.2d 545 (4th Cir.1991); United States v. Chester, 919 F.2d 896 (4th Cir.1990); United States v. Hummer, 916 F.2d 186 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1608 (1991); United States v. Summers, 893 F.2d 63 (4th Cir.1990). Harrell's crime encompassed her embezzlement of between five and six million dollars from the government through a continuous scheme that depended on her position as a closing agent for HUD. "The magnitude and the scope" of her crime is no more and no less than this. But each of these aspects is addressed by the Sentencing Guidelines or, in one case, a specific departure provision.
 
 
 27
 Harrell plead guilty to 18 U.S.C. Sec. 641 and was sentenced pursuant to guideline Sec. 2B1.1, "Larceny, Embezzlement, and Other Forms of Theft." The base offense level under Sec. 2B1.1 is 4. Among the section's specific offense characteristics is a loss table which incrementally increases the offense level based on the "loss." The table in effect at the time of Harrell's embezzlement escalated, beginning with "$100 or less," which received no increase, and terminating with losses "over $5,000,000," which received a thirteen level increase. U.S.S.G. Sec. 2B1.1(b)(1)(N). If she had only embezzled between $2,000,001 and $5,000,000, according to the table, an approximately three million dollar range, only twelve levels would be added. U.S.S.G. Sec. 2B1.1(b)(1)(M).
 
 
 28
 Effective November 1, 1989, a date after which the crime had been completed, the Commission amended the table by establishing a greater number of divisions under five million dollars and adding specific instructions about increasing offense levels for amounts above five million dollars. For example, prior to 1989, if the loss was $400,000, a nine level increase was required. After November 1, 1989, the same loss would require an eleven level increase. In addition, prior to 1989, the loss table ended with "over $5,000,000"; after November 1, 1989, the loss table ended with "more than $80,000,000." However, although the November 1, 1989 amendment resulted in a greater increase in the number of levels imposed for losses over five million dollars than the old table had required, any loss in the range of five to ten million dollars received identical punishment.
 
 
 29
 The loss table used to sentence Harrell contemplated and provided for a thirteen level increase for losses over five million dollars. The November 1, 1989 amendment could not have been relied on by the judge. See 18 U.S.C. Sec. 3553(a)(4); United States v. Morrow, 925 F.2d 779, 782-83 (4th Cir.1991). Nevertheless, the Commission's decision to treat post-1989 losses of five to ten million dollars the same, instead of, for example, increasing offense levels every million dollars, reinforces that the magnitude of Harrell's crime--five to six million dollars--was to be dealt with under the Guidelines loss provision for a loss over five million dollars.[1] The magnitude of Harrell's crime was adequately considered by the loss table and the Sentencing Guidelines.
 
 
 30
 Although I am sympathetic with the district court judge's belief that the largest embezzlement he had ever encountered deserved an upward departure, it is precisely such discretion that the Guidelines were designed to eradicate. U.S.S.G. Sec. 1A3; see United States v. Pinto, 875 F.2d 143, 144-45 (7th Cir.1989) ("To reduce disparity in sentencing means telling some judges not to take into account things they would prefer to consider, or to weigh things differently than they think best.") (emphasis in original). The district court judge's good fortune never to be involved in an embezzlement case of similar proportions cannot justify an upward departure when the Guidelines adequately considered the magnitude of the crime.
 
 
 31
 The majority, however, sensing perhaps the futility in relying on the judge's invocation of "magnitude" to justify departure, has chosen to rely on "scope." But the "scope" of the crime, in its component parts, also adequately was considered by the Commission. Section 2B1.1(b)(5) permits a two level increase if "the offense involved more than minimal planning." The judge made that increase. Section 3B1.3 permits a two level increase if "the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." The judge made that increase. Such increases account for virtually every condemnable aspect of Harrell's crime. The one other imaginable effect of Harrell's embezzlement, the interference with HUD operations, was the basis for the judge's upward departure under Sec. 5K2.7, departure for disruption of governmental function. Once those increases are made, nothing remains unaccounted for in the "scope" of the crime. Departing upward based on "scope" here has resulted in "impermissible double-counting." United States v. Kikumura, 918 F.2d 1084, 1119 (3d Cir.1990).
 
 
 32
 This circuit has yet to decide when an appellate court may affirm and when it must remand an upward departure based on both proper and improper grounds. The Ninth and Tenth Circuits have concluded that reliance on proper and improper factors requires the appellate court to vacate the sentence and remand. See United States v. Castro-Cervantes, 927 F.2d 1079, 1982 (9th Cir.1991); United States v. Zamarripa, 905 F.2d 337, 342 (10th Cir.1990); United States v. Hernandez-Vasquez, 884 F.2d 1314, 1315-16 (9th Cir.1989). The First, Sixth, and Seventh Circuits have created multi-factored analyses to determine whether remand is necessary. See United States v. Diaz-Bastardo, 929 F.2d 798, 780 (1st Cir.1991); United States v. Franklin, 902 F.2d 501, 508 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 274 (1990); United States v. Rodriguez, 882 F.2d 1059, cert. denied, --- U.S. ----, 110 S.Ct. 1144 (1990); see also United States v. Jagmohan, 909 F.2d 61, 65 (2d Cir.1990) (downward departure context). In Hummer, the court briefly addressed the issue by referring to the Seventh and Sixth Circuits, and noting, "We believe that the latter rule is more consistent with the 'reasonableness' standard of departure under 18 U.S.C. Sec. 3742. However, we need not resolve that issue here...." 916 F.2d at 195 n. 5.
 
 
 33
 Under either analysis, Harrell's sentence should be vacated and the case remanded for resentencing. The judge improperly departed based on "the magnitude and the scope" and thus under the Ninth and Tenth Circuit's precedent, remand is required. The First Circuit has held,
 
 
 34
 a departure which rests on a combination of valid and invalid grounds may be affirmed so long as (1) the direction and degree of the departure are reasonable in relation to the remaining (valid) ground, (2) excision of the improper ground does not obscure or defeat the expressed reasoning of the district court, and (3) the reviewing court is left, on the record as a whole, with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed. Thus, if the reasons for a departure provided by the district court appear irretrievably intertwined, or if the inappropriate ground appears to have been the centerpiece of the lower court's thinking, or if the remaining ground cannot alone support the extent of the departure, then the sentence should be vacated and the case remanded for resentencing.
 
 
 35
 United States v. Diaz-Bastardo, 929 F.2d at 800.
 
 
 36
 Although meeting one of the Diaz-Bastardo factors would be sufficient, here all counsel for remand. First, the reasons for a departure were "irretrievably intertwined." The district judge did not state that either the disruption of governmental function or the magnitude and the scope of the crime justified the upward departure. The judge stated that "an upward departure is warranted in this case for two reasons...." (Emphasis added.) Second, the "inappropriate ground" was the "centerpiece of the lower court's thinking." The judge concluded that "[t]he sentence is at the top of the allowable guidelines, which are 37 to 46 months because of the magnitude and the scope of the crime." (Emphasis added.) Third, the remaining ground, the Sec. 5K2.7 departure "cannot alone support the extent of the departure." See Wright, 924 F.2d at 549-50 (discussing differing standards to measure "reasonableness"). Without the upward departure, Harrell's sentence would have been in the 30 to 37 month range.[2] The nine month upward departure is approximately twenty-five percent above the maximum sentence under the Guidelines. Based on two valid reasons, the departure might be reasonable. Based on only one, the extent of the departure no longer appears supported. Cf. United States v. Burns, 893 F.2d 1343, 1347 (D.C.Cir.1990) (finding a 23 month departure not unreasonable given three "specific and legitimate grounds for departure"), cert. granted, 110 S.Ct. 3270 (1990).
 
 
 37
 The degree of departure is particularly questionable in light of the district court's failure to address Harrell's argument that her testimony before the congressional subcommittee without immunity and her cooperation with the government mitigated any upward departure. See United States v. Harotunian, 920 F.2d 1040, 1042-44, 1046 (1st Cir.1990) (advocating interim increases and decreases before reaching a final "singular" departure). The government argued that "the credit that she gets for that [her actions in assisting the government] is limited to what the sentencing commission provided under 3E1.1" However, in United States v. Carey, 895 F.2d 318 (7th Cir.1990), the court held that "[u]nder Sec. 5K2.0, the Guidelines allow a court to increase the two-level reduction given the defendant for his acceptance of responsibility...." The contrary position advocated by the government at the sentencing hearing was legally incorrect. Indeed, the government in its appellate brief even states, "[r]egardless of the validity of the government's argument of a two-level limit for acceptance of responsibility...." Although the majority has stated that the district judge never indicated that he believed he lacked the ability to depart downward, when Harrell's counsel argued that he felt "that there is a legal basis" for the judge "to consider a super-acceptance of responsibility, acceptance of responsibility beyond the norm," the judge replied, "Well, the guidelines don't refer to any norm." If the judge had realized that a decrease in the sentence could be made for atypical acceptance of responsibility, the nine month increase in the sentence might have been smaller.
 
 
 38
 United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 111 S.Ct. 65 (1990), does not apply. The decrease urged for "super-acceptance" of responsibility is not a "downward departure," that is, a departure resulting in a sentence below the normal Guideline Sentencing range. See Harotunian, 920 F.2d at 1042-44. Rather, the incorporation of such consideration would modify or mitigate the increase under Sec. 5K2.7 to leave the crime punishable at Guideline levels.
 
 
 39
 In conclusion, I would remand to the district judge to permit him to reconsider what degree of departure is reasonable based only on significant disruption of governmental function and whether Harrell's cooperation with congressional authorities and others served to mitigate the degree of departure.
 
 
 
 [1]
 Of course, an upward departure in some cases under the prior rule might be justified based on magnitude. For example, in United States v. Harotunian, 920 F.2d 1040 (1st Cir.1990), the district court confronted a loss of over eleven million dollars and departed upward. On review, the appellate court upheld the departure. "In this instance, we agree with the court below that the magnitude of the amount embezzled--more than twice as high as the largest sum mentioned in section 2B1.1(b)(1)--was sufficiently unique and meaningful to warrant a departure." 920 F.2d at 1045. The district court's conclusion that Harrell had embezzled "somewhere between five and six million dollars," compared to $5,000,000, the highest figure mentioned in the pre-1989 Guidelines, does not rise in any significant way to the level of an over one hundred percent increase
 
 
 [2]
 Without the departure, Harrell would have been sentenced at offense level 19 which has a 30 to 37 month range