974 F.2d 1332
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Dominic CAROZZA, a/k/a Crowbar, Defendant-Appellant.
 No. 91-5324.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 7, 1992
Decided: September 1, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CR-90-363-JFM)
 ARGUED: Phillip McKay Sutley, Baltimore, Maryland, for Appellant.
 Geoffrey Robert Garinther, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 ON BRIEF: Richard D. Bennett, United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 Affirmed.
 Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Dominic Carozza appeals from the sentence imposed upon him by the United States District Court for the District of Maryland following his conviction on one count of possession of ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1), and one count of tampering with a witness in the same case, a violation of 18 U.S.C. § 1512(b)(1). Carozza argues that the district court erred in departing upward, from a guideline range of 37 to 46 months under a criminal history category of II, to arrive at a sentence of 60 months under a criminal history category of IV. Finding no error, we affirm.
 
 
 2
 On June 28, 1990, Baltimore City police detectives executed a search warrant at Carozza's home in Baltimore. That search warrant had issued as part of the investigation of a state first-degree murder charge of which Carozza later was convicted. The search yielded twenty-nine .38 caliber bullets from a safe in Carozza's bedroom. As a convicted felon Carozza was forbidden to possess any such ammunition. 18 U.S.C. § 922(g)(1).
 
 
 3
 During the time of the commission of the possession of ammunition offense, Carozza was living with his then-girlfriend, Marsha Hammons. On September 6, 1990, Hammons was called to testify before a federal grand jury investigating Carozza's unlawful possession of ammunition. Upon Hammons' return home following her grand jury testimony, Carozza threatened her verbally, saying he would put her in a "pine box" and "fill her so full of holes she'd look like ... swiss cheese." A second incident occurred some ten days later, when Carozza repeated his earlier threats against Hammons and another potential witness. During the second incident Carozza grabbed Hammons around the neck and began choking her before she escaped his grasp and ran from the house.
 
 
 4
 On September 27, 1990, a federal grand jury returned a two-count superseding indictment charging Carozza with the ammunition offense and with one count of intimidating Hammons, a witness in the ammunition case. On January 10, 1991, after a two-day trial, a jury convicted Carozza on both counts. Following the federal convictions but before federal sentencing, Carozza was convicted, on March 5, 1991, in the Circuit Court for the City of Baltimore on the aforementioned first-degree murder charge and sentenced to a life term.
 
 
 5
 The probation officer's initial calculations under the sentencing guidelines resulted in a criminal history category of II and an offense level of 20, yielding a sentencing range of 37 to 46 months. Because Carozza had not yet been convicted of the state murder charge at the time of this initial calculation, the probation officer did not include that crime in arriving at the criminal history category of II. Inclusion of that conviction and sentence would result in a criminal history category of III and a sentencing range of 41 to 51 months.
 
 
 6
 At sentencing the government urged the court to depart upward on two grounds. The government argued first that, pursuant to U.S.S.G. § 4A1.3, Carozza's criminal history category did not adequately reflect the seriousness of his past criminal conduct. Second, the government asserted that the Sentencing Commission, in setting the offense level for witness tampering, did not adequately take into account the unusual circumstances of Carozza's conduct in this case. Here the government pointed to the facts that Carozza had threatened a witness in his own criminal case rather than that of another defendant, and that the victim, Hammons, was particularly susceptible to Carozza's threats because she lived in his house and was financially dependent on him.
 
 
 7
 The district court, seeking to avoid the possible need for resentencing should the state murder conviction be reversed on appeal, chose to calculate Carozza's criminal history category and sentencing range without including that state conviction and sentence.[1] Thus, the court began from the 37 to 46-month range associated with a criminal history category of II. The court then departed upward, imposing a total prison sentence of 60 months, which was within the 51-63 month range of a criminal history category of IV. Specifically, the court explained that it would have departed up to a sentence of 54 months on grounds that the criminal history category of II inadequately reflected the seriousness of Carozza's criminal history,[2] and that it was departing up six additional months on grounds that the Sentencing Commission did not take into account the atypical nature of Carozza's conduct in tampering with witness Hammons. Carozza now appeals the resulting sentence.
 
 
 8
 The analysis under which we review a district court's departure from the otherwise applicable Guidelines range is well set out in United States v. Hummer, 916 F.2d 186 (4th Cir. 1990), cert. denied, 59 U.S.L.W. 3702 (U.S. 1991). That analysis is as follows:
 
 
 9
 [F]irst examine de novo the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors "not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." If the sentencing court identified one or more factors potentially warrant ing departure, we apply a clearly erroneous standard and review the factual support in the record for those identified circumstances. Upon ascertaining that there is an adequate factual basis for the factors, we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines range "should result." Similarly, we apply an abuse of discretion standard to determine if the extent of departure was reasonable.
 
 
 10
 Hummer, 916 F.2d at 192 (citations omitted); see also United States v. Chester, 919 F.2d 896, 900 (4th Cir. 1990).
 
 
 11
 We consider first the upward departure under U.S.S.Gs 4A1.3 on grounds that Carozza's criminal history category inadequately represented the seriousness of his criminal past. As to the first step of our analysis, the Policy Statement contained in § 4A1.3 makes clear that "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." Thus, there is no question that the district court's finding that Carozza's criminal history category significantly under-represented his prior criminal activity may be a proper basis for departure.
 
 
 12
 Next, we review that factual finding for clear error. The presentence report, upon which the district court apparently relied,[3] catalogs Carozza's rather extensive criminal record. That record consists of 14 convictions on charges ranging in seriousness from disorderly conduct to felony assault with intent to kill and unlawful possession of a firearm by a convicted felon. However, all but three of the convictions occurred more than 15 years before Carozza's conviction in the instant case; thus he accumulated only three criminal history points, earning him a criminal history category of II. See U.S.S.G. § 4A1.2(e). Moreover, Carozza's criminal record reflects what the district court might well have viewed as lenient past treatment for serious criminal conduct. Carozza accumulated 11 convictions between 1950 and 1984 on charges of disorderly conduct and assault, for which he received only nominal fines and probation. Even his convictions on the more serious charges, one of which arose out of shooting a man, yielded only two relatively short prison terms.
 
 
 13
 On the foregoing facts we simply cannot say that the district court's finding was clearly erroneous. The presentence report amply supports a finding that Carozza was a "defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past", and that, due to the age of many of his convictions, he had"the same criminal history category as a defendant who had a record of less serious conduct." U.S.S.G. § 4A1.3, comment. (backg'd). Further, we note that the district court properly could have relied upon Carozza's recent state murder conviction to support this departure, see U.S.S.G. § 4A1.3(a), though the transcript of the sentencing hearing does not disclose that it did.
 
 
 14
 As to the third element of the Hummer analysis, we are satisfied that the district court did not abuse its discretion in finding that the disparity between Carozza's criminal history category and his actual criminal background was of "sufficient importance in the case" to warrant departure. See Hummer, 916 F.2d at 192. Indeed, the Sentencing Commission's explicit recognition in § 4A1.3 of the importance of a defendant's actual criminal background as compared to the applicable criminal history category suggests that sentencing courts have broad discretion in this respect.
 
 
 15
 Further, we hold that the extent of this departure was within the district court's discretion. The court could have sentenced Carozza without explanation to a sentence of 46 months, representing the high end of the range associated with the criminal history category of II. Thus, a departure to 54 months on account of criminal history would have amounted to an increase of only eight months, or a finding by the court that Carozza's criminal history was more accurately represented by a criminal history category of IV.[4] We find this increment plainly within the sound discretion of the sentencing court.
 
 
 16
 Carozza next challenges the district court's decision to increase his sentence to 60 months because the court found that the witness, Hammons, being Carozza's live-in girlfriend, was particularly susceptible to Carozza's threats. We are of opinion that the court's arrival at a total sentence of 60 months is best viewed not as a distinct upward departure, rather as a decision to sentence Carozza toward the upper end of the applicable guideline range.
 
 
 17
 We have already examined and affirmed the district court's departure under U.S.S.G. § 4A1.3, which amounted to a decision that the gravity of Carozza's criminal background was better represented by a criminal history category of IV than of II. Assuming a criminal history category of IV, Carozza's offense level of 20 results in a sentencing range of 51 to 63 months. U.S.S.G. Ch.5, Pt.A (Sentencing Table). The court's choice of a 60-month sentence, therefore, falls squarely within the range of sentences set out in the guideline applicable after the court's decision to depart upward under § 4A1.3. We see no need to add an additional layer of analysis by treating the increase from 54 to 60 months as a distinct departure.
 
 The sentence appealed from is accordingly
 
 18
 AFFIRMED.
 
 
 
 [1]
 We note that the November, 1991 amendments to the sentencing guidelines added § 4A1.2(1), which provides that"[p]rior sentences under appeal are counted [for purposes of computing criminal history category] except as expressly provided below." This amendment, when read in conjunction with the rest of the provisions dealing with criminal history, suggests that the guidelines now do not contemplate the district court's exclusion of Carozza's state murder sentence from his criminal history score. However, we need not decide whether the rule was the same at the time of Carozza's sentencing in May, 1991, nor whether the district court has discretion to exclude such sentences on appeal, as we would uphold the court's decision to depart upward to the 60 month sentence under a criminal history category of IV whether that departure was from a criminal history category of II or III
 
 
 [2]
 Though the district court spoke of its departure in terms of an increase in the number of months to be served, an approved practice under § 4A1.3 appears to be to ask what criminal history category best represents the seriousness of the defendant's past criminal conduct. The court may then proceed to sentence the defendant to an appropriate term within the range associated with that criminal history category. United States v. McKenley, 895 F.2d 184, 185-86 (4th Cir. 1990)
 
 
 [3]
 A court may properly rely on information contained in the presentence report as a basis for factual findings related to sentencing. United States v. Terry, 916 F.2d 157, 160 (4th Cir. 1990)
 
 
 [4]
 A sentence of 54 months falls within the sentencing range associated with an offense level of 20 and a criminal history category of IV. See U.S.S.G. Ch.5, Pt.A (Sentencing Table)